JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
DEREK JAMES GRAHAM

SCOTT KEITH NEWELL

**(b)** County of Residence of First Listed Plaintiff   Richland County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Leno P. Thomas, Esq.

Solomon, Berschler, 317 Swede St. Norristown, PA 19401
610-279-4300

## DEFENDANTS
VALLEY FORGE MILITARY ACADEMY & COLLEGE;

VALLEY FORGE MILITARY ACADEMY FOUNDATON, ET AL

County of Residence of First Listed Defendant    DELAWARE
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
George B. Randolph, Esq.

RILEY, RIPER, HOLLIN & COLAGRECO
717 Constitution Dr. Suite 201, Exton, PA 19341 610-458-4400

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☒ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product        Product Liability |  |      28 USC 157 |     3729(a)) |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ |  |  | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &        Pharmaceutical |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|      & Enforcement of Judgment |      Slander        Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'        Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |      Liability    ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|      Student Loans | ☐ 340 Marine        Injury Product | |     New Drug Application | ☐ 470 Racketeer Influenced and |
|      (Excludes Veterans) | ☐ 345 Marine Product        Liability | | ☐ 840 Trademark |     Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending |      Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract |      Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) |     Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal        Property Damage |      Relations | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise |      Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury -        Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| |      Medical Malpractice |      Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |      Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee |      Income Security Act |     or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party |     Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/        Sentence | |     26 USC 7609 |     Agency Decision |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | |     State Statutes |
| |      Employment    **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |      Other    ☐ 550 Civil Rights |      Actions | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.  Section 1332 and 28 U.S. C. Section 1391

Brief description of cause:
Complaint for Injunctive Relief and Damages

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
4-1-2019

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATED DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DEREK JAMES GRAHAM as parent and natural guardian of M.G., a minor 46 Cheney Avenue, Peterborough, New Hampshire 03458 And SCOTT KEITH NEWELL as parent and natural guardian of A.N., a minor 16 Barberry Lane, Columbia, South Carolina 29212 | NO. __ |
| *Plaintiffs,* | |
| v. | |
| VALLEY FORGE MILITARY ACADEMY AND COLLEGE 1001 Eagle Road, Wayne, Pennsylvania 19087 And VALLEY FORGE MILITARY ACADEMY FOUNDATION BOARD OF TRUSTEES 1001 Eagle Road, Wayne, Pennsylvania 19087 And JOHN ENGLISH in his capacity as CHAIRMAN OF THE VALLEY FORGE MILITARY ACADEMY FOUNDATION BOARD OF TRUSTEES 1001 Eagle Road, Wayne, Pennsylvania 19087 *Defendants.* | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, Derek James Graham and Scott Keith Newell, individually and on behalf of

their minor children (collectively, the "Plaintiffs"), by and through their undersigned counsel,

hereby asserts the following Complaint against Defendants Valley Forge Military Academy

and College ("VFMAC"), Valley Forge Military Academy Foundation Board of Trustees

("Foundation Board"), and John English in his capacity as Chairman of the Valley Forge

Military Academy and College Board of Trustees ("John English") (collectively,

"Defendants") seeking injunctive relief and monetary damages.

## PRELIMINARY STATEMENT

1.     This is an action that centers on the stability of VFMAC, the fiduciary duty of

the Foundation Board to the Plaintiffs, and the product/education that Plaintiffs as parents of

cadets matriculating at VFMAC are receiving in exchange for the substantial tuition moneys

paid (in excess of $45,000 per year per student). Plaintiffs bring this action against VFMAC,

The Foundation Board, and John English to cease their illicit conduct and bad faith

dealings and to preclude Defendants' from unlawfully making decisions in violation of the

Valley Forge Military Academy Foundation Bylaws that are harmful to the school as well

as to the students, parents, and alumni of the school.

2.     Defendants' perpetuated numerous dealings that upon information and belief

were self serving and in bad faith with regards to VFMAC. One of these actions was the

sudden and illegal removal of Major General Walt Lord by John English without the vote

of the entire Foundation Board, which is a specific power reserved for the entire

Foundation Board. Further, a Comprehensive Assessment for Valley Forge Military Academy

and College, concluded and written in December of 2018 by the Healey Education Foundation,

showed that VFMAC was in dire need of help. "Valley Forge Military Academy and College is

a small, independent institution with an endowment of approximately $10 million that is far

short of what is necessary to fund the school in times of scarcity. Tuition, room and board is

approximately $45,000. However there is no strategic vision coming from the board that gives any indication that they grasp this reality. An independent school and college board has two major responsibilities: To carefully choose and support the president who is in charge of the day to day operation of the school (and) to ensure the financial health and sustainability of the school." Upon information and belief, the Healey Report was presented to Defendant English several months ago, but Mr. English did not disseminate the report amongst the other Board members for reasons unknown. Pursuant to paragraph 28 of the Foundation Bylaws, one of the duties of the Chairman of the Board is to report to the Board all matters within the Chairman's knowledge which the interests of the Foundation may require to be brought to their notice.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. This is an action between citizens of different states – Plaintiffs are citizens of New Hampshire and South Carolina, respectively; Plaintiffs seek actual, compensatory and punitive damages with a present monetary value, exclusive of costs and interest, well in excess of $75,000; and there exists complete diversity of citizenship.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action and upon which the allegations in the Complaint are based occurred within this District.

## PARTIES

5.      Plaintiff Derek Graham is the parent of M.G., a cadet currently enrolled at Valley Forge Military Academy and College.

6.      Plaintiff Derek Graham and M.G. are citizens of New Hampshire with an address of 46 Cheney Avenue, Peterborough, New Hampshire, 03458.

7.      Plaintiff Scott Newell is the parent of A.N., a cadet currently enrolled at Valley Forge Military Academy and College.

8.      Plaintiff Scott Newell and A.N. are citizens of South Carolina with an address of 16 Barberry Lane, Columbia, South Carolina, 29212.

9.      Defendant Valley Forge Military Academy and College (Hereinafter "VFMAC") is an American independent college preparatory boarding school (grades 7–12) and, as of Fall 2006, coeducational independent junior college and military junior college located in Wayne, Pennsylvania.

10.      Defendant Valley Forge Military Academy Foundation Board of Trustees is an entity that oversees the long-term strategic planning of VFMAC, approves policies and procedures, handles budgeting, hires key executive leadership positions, and monitors the overall performance of the institution.

11.      Defendant John English serves as the current Chairman of the Board of Trustees for Valley Forge Military Academy Foundation, and has held that role since 2016.

12.      Plaintiffs have standing via *In Loco Parentis*; "When parents place minor children in private schools for their education, the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them." Vernonia School Dist. 47J v. Acton, 515 US 646, 654-55 (1995).

## FACTUAL ALLEGATIONS

13.    On March 8, 2019, Major General Walter T. Lord suddenly and unexpectedly resigned of as President of VFMAC, citing dysfunctional governance of VFMAC. A copy of this letter is attached hereto as Exhibit "A."

14.    Major General Lord had served as the President of VFMAC for less than a year, having started his term in April of 2018.

15.    In a statement made by John English on behalf of the Board of Trustees on March 8, 2019, the Board announced that they were "…committed to working with him (Major General Lord) to achieve an orderly transition…." A copy of this statement is attached hereto as Exhibit "B."

16.    Thus, an arrangement was made that Major General Lord would stay on as President of VFMAC until the end of the year, June 30, 2019, as per his resignation letter issued on March 8, 2019 to the Board.

17.    On March 10, 2019, without having properly called a meeting of the Board of Trustees, Chairman English emailed a statement to MG Lord terminating his employment immediately. A copy of this letter is attached hereto as Exhibit "C."

18.    On March 11, 2019, the Board of Trustees issued a statement announcing that Major General Lord would be immediately replaced by two individuals currently serving in upper management roles at VFMAC without the allowance of Major General Lord to oversee the transition as originally promised. A copy of this statement is attached hereto as Exhibit "D."

19.   Upon information and belief, the Board of Trustees did not follow correct procedure in scheduling any alleged special meeting on March 10, 2019 or on March 11, 2019 where Chairman English alleges in his letter that the Board entered executive session. A copy of the Foundation Bylaws is attached hereto as Exhibit "E."

20.   Further, according to Foundation Bylaws at paragraph 22, only the Board of Trustees as a whole has the specific power to appoint, remove, or suspend a President of the Valley Forge Military and College.

21.   Via the March 10, 2019 letter, Chairman English took improper unilateral action to immediately release MG Lord of his position as President of VFMAC, and upon review of the Foundation Bylaws, it appears that Chairman English has breached his fiduciary duty to the Foundation, the Board of Trustees, VFMAC, and to the students, parents, and alumni of VFMAC.

22.   The two individuals appointed to replace Major General Lord by Chairman English were not properly vetted and may be unqualified to serve in the role as President of VFMAC.

23.   Prior to Major General Lord's resignation and subsequent abrupt removal from office, a Comprehensive Assessment for Valley Forge Military Academy and College, concluded and written in December of 2018 by the Healey Education Foundation, attached hereto as Exhibit "F," offered suggestions to help VFMAC thrive.

24.   One of the suggestions the Healey Report made was to cease micromanagement of the President of VFMAC.

25.    In the Healey Report, Governance is identified as an area of VFMAC that needs vast improvement. "The school will not survive if the Board continues in its present form and function."

26.    "Valley Forge Military Academy and College is a small, independent institution with an endowment of approximately $10 million that is far short of what is necessary to fund the school in times of scarcity. Tuition, room and board is approximately $45,000. There seems to be, however no strategic vision coming from the board that gives any indication that they grasp this reality. An independent school and college board has two major responsibilities: To carefully choose and support the president who is in charge of the day to day operation of the school (and) to ensure the financial health and sustainability of the school."

27.    Upon information and belief, the Healey Report was presented to Defendant English in February of 2019, but Mr. English did not disseminate the report amongst the other Board members for reasons unknown.

28.    Pursuant to paragraph 28 of the Foundation Bylaws, one of the duties of the Chairman of the Board is to report to the Board all matters within the Chairman's knowledge which the interests of the Foundation may require to be brought to their notice.

29.    Upon information and belief, the Board has not complied with disclosures of conflicts of interest per paragraph 56 of the Bylaws, and the Board has failed to comply with the Trust Ethics policies found under paragraphs 57 through 60 of the Bylaws.

30.    Each student that enrolls as a cadet at VFMAC pays a tuition in excess of $45,000 per year in reliance on VFMAC's promise that students would be engaged in military

tradition and honor, and that the parents of the cadets would have full confidence that their child would receive a quality military style education.

31.     Because of the Board of Trustees' recent actions, including the high turnover of Presidents, multiple prospective students have changed their minds about applying and enrolling at VFMAC, leading to a downward trend in enrollment and a diminished value of an education at VFMAC.

32.     Due to the recent actions of the Board of Trustees that have caused widespread instability campus-wide, there have been recent accounts of student assaults and injuries on the campus of VFMAC that have alarmed Plaintiffs as well as numerous parents of VFMAC students and alumni concerned with student safety. See the affidavits of the parents of current VFMAC students attached hereto as Exhibit "G."

33.     Further, the Alumni of VFMAC have formed a petition, attached hereto as Exhibit "H," amassing over 2,500 supporters and requesting that the Board of Trustees increase its transparency over what has transpired and over future operations in order to help maintain the integrity of VFMAC.

34.     In sum, there have been numerous violations of fiduciary duty committed by the Board, and specifically Chairman of the Board John English, that warrant this Honorable Court's intervention in order to preserve the integrity of Valley Forge Military Academy and College.

35.     Upon information and belief, without the benefit of injunctive relief, the Defendants are to this day continuing to operate VFMAC, relying upon and misappropriating tuition funds of the Plaintiffs, placing the school in financial peril, and

creating chaos within the school at the expense of the safety of the students. Absent immediate injunctive relief, Plaintiffs will continue to suffer irreparable harm through Defendants' actions.

## COUNT I
## BREACH OF FIDUCIARY DUTY

36.     Paragraphs 1 through 35 are incorporated by reference as if set forth fully therein.

37.     At all times the Valley Forge Military Academy Foundation Board and John English were agents of VFMAC, which received funding in part by tuition monies paid by Plaintiffs and other parents of students who enrolled at VFMAC.

38.     As agents of VFMAC, which received funding in part by tuition monies paid by Plaintiffs and other parents of students who enrolled at VFMAC, the Foundation Board and John English owed Plaintiffs a fiduciary duty.

39.     The Foundation Board and John English, through their actions as set forth herein, intentionally and willfully violated their fiduciary duties to Plaintiffs by taking actions against VFMAC's interest while employed by VFMAC and receiving funding in part by tuitions paid.

40.     As a direct and proximate result of The Foundation Board's and John English's acts and omissions, Plaintiffs have suffered substantial damages and will continue to suffer substantial damages, absent Court intervention.

41.     The Foundation Board's and John English's actions have been willful and outrageous and undertaken with reckless indifference to the rights of Plaintiffs.

## COUNT II
## BREACH OF DUTY OF LOYALTY

42.     Paragraphs 1 through 41 are incorporated by reference as if set forth fully
therein.

43.     At all times the Valley Forge Military Academy Foundation Board and
John English were agents of VFMAC, which received funding in part by tuition monies
paid by Plaintiffs and other parents of students who enrolled at VFMAC.

44.     As agents of VFMAC, which received funding in part by tuition monies
paid by Plaintiffs and other parents of students who enrolled at VFMAC, the Foundation
Board and John English owed Plaintiffs a duty of loyalty.

45.     The Foundation Board and John English, through their actions as set forth
herein, through their actions as set forth herein, intentionally and willfully violated
their duties of loyalty to Plaintiffs by taking actions directly and undeniably contrary
to Plaintiffs' interests.

46.     As a direct and proximate result of The Foundation Board's and John
English's acts and omissions, Plaintiffs have suffered substantial damages.

47.     The Foundation Board's and John English's actions have been willful and
outrageous and undertaken with reckless indifference to the rights of Plaintiffs.

## PRAYER FOR
## RELIEF

WHEREFORE, Plaintiffs request the following relief:

(a) Plaintiffs request that a custodian, Jonathan M. Fishbein, M.D., be placed on the
Foundation Board of Trustees immediately under the provisions of 15 Pa. C.S. 5984 in order

to ensure that the Board complies with all fiduciary duties it owes to the Foundation and to VFMAC as well as makes the vital changes to VFMAC according to the Healey Report in order to ensure the survival of VFMAC.

(b) Defendants be enjoined, preliminarily until hearing, and thereafter permanently, from making any decisions on behalf of the Valley Forge Military Academy Foundation Board without the supervising entity's approval.

(c) Plaintiffs further request that Major Lord be immediately reinstated as VFMAC President until the end of the year, June 30, 2019, to ensure the smooth and stable transition to the next President of the Academy as per the original terms of his resignation.

(d) Defendants be ordered to immediately place all Foundation funds into an escrow account return to Plaintiff all Company documents and information, with the exception of documents and information pertaining to their personal compensation.

(e) Defendants be ordered to promptly produce copies of all such documents requested during the expedited discovery process related to Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

(f) Defendants be ordered to respond within five days of service of expedited discovery by Plaintiffs regarding subjects such as Foundation Board minutes and Foundation Board financial data.

(g) Defendants be enjoined from deleting, destroying, erasing, modifying, or otherwise altering any and all electronic media, including, but not limited to, work and personal email accounts, text messages, Skype logs, instant messages, application-based communications, external hard drives, thumb drives, or other portable media, network

drives, computers, cellular phones, smart phones, and personal digital assistants, that have stored Defendants' documents or information, or were used to transfer or temporarily store Defendants' documents, data, or information, or that referred or related to Plaintiffs as well as the operation and financial planning of VFMAC until such time that the Court gives them leave to do so.

(h) Plaintiffs be awarded all reasonable attorneys' fees, and costs incurred in addressing Defendants' misappropriation of Plaintiffs' paid tuition funds; and

(i) Plaintiffs be awarded such other and further necessary and proper relief as the Court may deem just and proper.

Respectfully submitted,

April 1, 2019

BY:   /s/Leno P. Thomas
        LENO P. THOMAS, ESQUIRE
        SOLOMON, BERSCHLER, FABICK,
        CAMPBELL & THOMAS, P.C.
        Attorney for Plaintiffs
        317 Swede Street
        Norristown, PA 19401
        610-279-4300
        Attorney ID No. 90702

# EXHIBIT A



### VALLEY FORGE MILITARY ACADEMY AND COLLEGE

1001 EAGLE ROAD, WAYNE, PA 19087-3695 / 610-989-1200 / FAX: 610-975-9642

OFFICE OF THE PRESIDENT

March 8, 2019

Mr. John English
Chairman, Board of Trustees
VFMAC

Dear Chairman English:

It is with extremely heavy heart that I offer my resignation as President of Valley Forge Military Academy and College. I will plan to serve through the end of the current fiscal year (June 30, 2019), but I am prepared to depart sooner if the Board of Trustees so desires.

Very early in my term, you and I had a spirited discussion about governance. I shared my opinion that you were much too involved in the day-to-day operations of the school. I acknowledged that you felt the need to be very directly involved prior to my arrival, but hoped that I had secured your trust and confidence and that of the Board to operate free of continual intervention into the depths of our organization. You stated then that you would "back off." Since then, we've repeated that discussion on several occasions and each time you repeated that you would back away from direct involvement in day-to-day operations. Unfortunately, that has not happened. At your core, you are a CEO and that is very clearly the approach that you take to your work as Chairman. Our school does not need two CEOs.

At my first Board meeting, four days after reporting as President, I told the Board that among my goals was to synchronize effectively the activities of our senior staff. I stated that I believed that would be the easiest of my goals to accomplish. It has, in fact, been the most difficult due to the frequent and direct guidance they receive from you.

I offer this resignation with only the best interest of our institution at heart. I cannot lead it effectively unless I am trusted and empowered to do so. The assessment that the Healy Education Foundation recently completed cites dysfunctional governance as the gravest danger to our school's continued existence. I could not agree more. I hope that my departure spurs an examination of our governance that leads to real and desperately needed change.

I look forward to following VFMAC's success as a supportive Alumnus.

Respectfully,

Walter T. Lord
VFMC Class of 1984
Major General, U.S. Army (Retired)
President

CF: Members of the VFMAC Board of Trustees

# EXHIBIT B



**VALLEY FORGE MILITARY ACADEMY AND COLLEGE**

March 8, 2019

Dear Friends of Valley Forge Military Academy and College:

I am saddened to report the news of the resignation of Major General Walt Lord as President of Valley Forge Military Academy and College. The Board of Trustees received General Lord's resignation letter during our board meeting earlier today, citing irreconcilable differences. The decision to resign was Walt's, he resigned of his own accord. The Board regretfully accepted his resignation and has committed to working with him to achieve an orderly transition, with both parties acting on what's best for the institution we both love, honor and respect.

I have the unanimous support of the Board of Trustees in wishing Walt and Grace Lord nothing but the best in their future endeavors and thank them for all they have done for Valley Forge.

Sincerely,

**John English**
Board Chair
Class of 1991

# EXHIBIT C

# VALLEY FORGE
### M I L I T A R Y
### A C A D E M Y & C O L L E G E

OFFICE OF THE CHAIRMAN OF THE BOARD

March 10, 2019

*__Via Email__*

Walter Lord, President
Valley Forge Military Academy and College
Crossed Sabers

     Re:    VFMAC

Dear Walt:

    As you know, your letter of resignation from employment at, and as President of, VFMAC was presented by you on Friday, March 8, 2019, and was accepted by the Board by unanimous vote. At that time, no actual end date was indicated in your letter that was discussed by the Board.

    Since that time, however, there have been comments and conduct by various people who are unaware of the much more strategic issues facing the school, and which comments and conduct have created separate issues detrimental to the institution. On Sunday morning, several members or representatives of the Board had asked to meet with you on Sunday to address these mounting issues. You replied that you were not available to meet.

    Given the mounting detriment to the institution, therefore, I write to advise you that your employment at VFMAC as President is ended, effective immediately. You had advised the Board in your letter that you would end your employment earlier, if requested, and that offer has been accepted. While Staff Memorandum provides that housing at VFMAC must ordinarily be ended within 30 days of the end of employment at VFMAC, the Board is willing to extend this date to something later than provided by the Staff Memo. The institution will also work out a mutually agreeable date and time when you can return to Wayne Hall to pick up your personal belongings that are located there. The institution also will supply whatever benefits are owed to you under your employment agreement of last year.

    The Board is unanimously supportive of the Chair. We regret that this action has to be taken. It is believed to be in the best interests of the institution, however.

    Should you have any questions, please do not hesitate to contact me.

          Very truly yours,

          John English
          Chair, Board of Trustees, VFMAC

# EXHIBIT D



**VALLEY FORGE MILITARY
ACADEMY AND COLLEGE**

March 11, 2019

Dear Friends of Valley Forge Military Academy and College:

Effective immediately, two individuals currently serving in upper management roles at Valley Forge
Military Academy and College will assume the duties of the Office of the President. The Office of the
President responsibilities will be shared by Col Stuart B. Helgeson, USMCR, Superintendent & COO
and Vincent Vuono, Chief Financial Officer and Treasurer of the Foundation. Given Stu and Vince's
backgrounds, experience and commitment to Valley Forge, the members of the Board of Trustees have
the utmost confidence that they will make a seamless transition into these leadership roles.

Sincerely,

Valley Forge Military Academy and College Board of Trustees



**VALLEY FORGE MILITARY**
ACADEMY AND COLLEGE

**March 12, 2019**

Dear Friends of Valley Forge Military Academy and College:

By now you are all well aware of the sudden resignation of Major General Walt Lord as President of Valley Forge Military Academy and College. His resignation is effective immediately and Col Stuart B. Helgeson, USMCR and Vince Vuono are now serving in dual roles under the heading of "Office of the President."

There have been rumors and innuendo surrounding MG Lord's unexpected departure, and I'm writing today to shed some light on what took place.

Key points that you should know are:
- The Board did not dismiss MG Lord. We were collectively taken aback by his resignation. We fully expected him to continue through the end of the year and through the 2019-2020 academic year.
- After MG Lord submitted his letter of resignation, the Board entered executive session and I offered to step down if the Board wished to retain MG Lord. That offer was rejected unanimously by those in attendance.
- VFMAC, like all military schools, continues to face challenges. However, we are in a better position than we have been in a decade, both financially and academically. Some credit for this goes to MG Lord, but not all. No institution succeeds because of one person; we have a very strong team in place, working in concert to take The Forge into the future.

I think most of you know the Valley Forge Board has always been very actively involved in the institution. We engage in vigorous debate. Our Board is filled with VFMAC alumni who love the institution and many of us were launched into successful careers from here. Through the years, we have learned the best results come as a result of open, honest and sometimes uncomfortable discussion. That said, once a decision has been made the Board sticks together.

MG Lord certainly knew and understood how our Board operated when he accepted the role of President. He served for nearly five years as a Trustee and was Chair of the College Oversight Committee. He saw first-hand the interaction of the Board and the staff at Valley Forge. He knew me and my management style. He knew the dynamics of the Board and the staff, which is part of the reason he was such an attractive candidate to run the institution. He knew and acknowledged the fiduciary responsibilities of the Board and our role in helping to achieve a solid, fiscal footing for Valley Forge.

It is important to stop and recognize that over the best part of a year, the combined team, staff and Board together, accomplished great things. Under the direction of alumnus Dr. Paul Lea, Dean of the Academy, our academic offerings there are greatly improved. The Academy is thriving. We rebuilt the



**VALLEY FORGE MILITARY**
ACADEMY AND COLLEGE

Commandant's Department with more senior TAC's, increased Academy enrollment, and tackled the elimination of school debt in FY '18-19.

However, we continue to face serious challenges on the college side. To stem that, management and the Board challenged the Dean and staff there to present ideas to stop attrition and improve its value proposition. The process included interviews with current and former cadets and other research; this will result in some changes at the college level designed to improve its fiscal footing, increase its relevance in today's Higher Ed marketplace, stop the exodus of students and increase enrollment. In the view of the Board, not making these changes would have been an abdication of responsibility.

The situation at Valley Forge is not unique to us – it exists at military schools and campuses throughout the country. I believe that the values Valley Forge stands for are more important than ever in today's society. My fellow Board members and I are deeply committed to ensuring that VFMAC survives and thrives into the future so that we can fulfill our mission and make a positive impact on the world around us.

I'm confident that with guidance and direction from Stu and Vince and with full cooperation from the staff and Board of Trustees, Valley Forge will continue along its path to greatness. Its trajectory is pointed in the right direction – upward.

Sincerely,

**John English**
Board Chair
Class of '91

# EXHIBIT E

# VALLEY FORGE MILITARY ACADEMY FOUNDATION
# BY–LAWS
### *(As of November 6, 2018)*

### *REGISTERED OFFICE*

1.   The registered office of the Foundation is to be at Wayne, Delaware County, Pennsylvania, or at such other location, either within or without the County as may be approved by the Trustees of the Foundation.

### *SEAL*

2.   The Corporate Seal of the Foundation shall have inscribed thereon the name of the Foundation, the year of its creation and the words "A NONPROFIT CORPORATION" and "CORPORATE SEAL, PENNSYLVANIA".

### *FISCAL YEAR*

3.   The fiscal year of the Foundation shall begin the first day of July.

### *MEMBERS*

4.   The membership of the Foundation shall consist of the persons constituting the Board of Trustees (sometimes referred to as the "Board of Trustees" and sometimes referred to as the "Board").

### *APPOINTMENT OF TRUSTEES*

5.   The business of the Foundation shall be managed by a Board of Trustees, no less than nine (9), nor more than thirty–five (35) in number.  Trustees shall be appointed or designated in the following manner: At the Annual Meeting, Trustees shall appoint and reappoint Trustees, each Trustee to serve for three years from 1 July of the first year through 30 June of the third year, or until their successors are duly appointed and qualified.  Annually, two (2) representatives of the Alumni Association (the "Alumni Association Representatives") shall be appointed members of the Board of Trustees in the manner provided in Paragraph 6, below.  The incumbent President of Valley Forge Military Academy and College shall be an ex officio, nonvoting member of the Board of Trustees, and shall not be counted as part of the thirty-five (35) nor for purposes of a quorum.  Except with respect to the Alumni Association Representatives (referred to in Paragraph 6, below), the term of up to eleven (11) of the Trustees shall expire at the end of each year.  A newly appointed Trustee may be appointed for an initial term of less than three (3) years.

*914450.1*

By–Laws
November 6, 2018
Page 2

6.   Upon satisfactorily completing the vetting process (the process of examination, investigation and evaluation of a prospective member of the Board of Trustees) by the Committee on Trustees and appointment by the Board of Trustees, in accordance with the provisions of Paragraph 5, the incumbent Chairman of the Board of Directors of the Alumni Association and the incumbent President of the Alumni Association shall become Trustees.  In the event the incumbent Chairman of the Board of Directors of the Alumni Association and/or the incumbent President of the Alumni Association does not satisfactorily complete the vetting process of the Committee on Trustees and appointment by the Board of Trustees, the Board of Directors of the Alumni Association shall designate a member or members of the Board of Directors of the Alumni Association to serve on the Board of Trustees in place of the incumbent Chairman and/or incumbent President, subject to such designated member or members satisfactorily completing the vetting process of the Committee on Trustees and appointment by the Board of Trustees, as previously stated.

## MEETING OF TRUSTEES

7.   There shall be four (4) meetings of the Board of Trustees during each fiscal year, one during each calendar quarter if possible. One meeting shall be held on a weekday during the week of Alumni Homecoming Saturday in spring in each year, at a time and place designated by the Chairman of the Board of Trustees of the Foundation (the "Annual Meeting"). The other three meetings shall be held at times and places, also designated by the Chairman of the Board ("Regular Meetings").

## SPECIAL MEETINGS

8.   Special meetings may be held at the call of the Chairman, which the Chairman may make at the Chairman's discretion and shall make on the written request of a minimum of seven (7) Trustees. Special meetings will require at least five (5) days written notice or three (3) days electronic mail, facsimile or telephone notice.

## NOTICE OF MEETINGS OF TRUSTEES

9.   Except as provided in paragraph 8, relating to Special Meetings, a written notice of all Trustee meetings shall be given at least ten days prior to the meeting.

10. Under the provisions of the Nonprofit Corporation Law of 1988 (the "1988 NCL") or by the Articles of Incorporation (the "Articles") or by these By–Laws, notice of the date, time and place of every stated annual and regular meeting shall be sent by mail, email or facsimile to each Trustee at the last known address on record with the Foundation, at least ten (10) calendar days prior to the time set for the meeting. If mailed, the notice of a meeting shall be deemed to be delivered when deposited in the United States mail, postage prepaid, addressed to the member at the member's current address as it appears on the record of the Foundation. A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the 1988 NCL, the Articles or these By–Laws.

914450.1

By–Laws
November 6, 2018
Page 3

11. Notice or other communications shall not be sent to any Trustee with whom the Foundation has been unable to communicate for more than twelve (12) consecutive months because communications to the Trustee are returned unclaimed or the Trustee has otherwise failed to provide the Foundation with a current address. Whenever the Trustee provides the Foundation with a current address, the Foundation shall commence sending notices and other communications to the Trustee in the same manner as to other Trustees.

### *NOTICE OF CANCELLED MEETING OF TRUSTEES*

12. When a meeting of Trustees is cancelled, it shall not be necessary to give any notice of the cancelled meeting or of the business to be transacted at the cancelled meeting, other than by announcement at the meeting at which the cancellation is taken, unless the Board fixes a new record date for the cancelled meeting.

### *WRITTEN WAIVER OF NOTICE*

13. Whenever any written notice is required to be given under the provisions of the 1988 NCL, the Articles or these By–Laws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice. Except as otherwise required by this section, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting. In the case of a Special Meeting of Trustees, the waiver of notice shall specify the general nature of the business to be transacted.

### *WAIVER OF NOTICE BY ATTENDANCE*

14. Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except wherein a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

### *QUORUM AND VOTING AT MEETINGS OF BOARD*

15. Each Trustee shall be entitled to one vote in person or by proxy.

16. A majority of the then current membership of the Board of Trustees, in person or by proxy, shall constitute a quorum for the transaction of any business, and the acts of a majority of such members of the Board at the meeting at which a quorum is present shall, unless otherwise specifically provided by the 1988 NCL, the Articles or these By–Laws, be the acts of the Board of Trustees. If all the Trustees constituting the Board at any time shall severally or collectively consent in writing to any action to be taken by the Foundation, such action shall be as valid corporate action as though it had been authorized at a meeting of the Board of Trustees.

### *PROXIES*

*914450.1*

By–Laws
November 6, 2018
Page 4

17. Every Trustee entitled to vote at a meeting of Trustees or to express consent or dissent to Foundation action in writing without a meeting may authorize another person to act for the Trustee by proxy. However, the person to whom the proxy is assigned must also be a Trustee.

18. The presence of, or vote or other action at a meeting of Trustees, or the expression of consent or dissent to Foundation action in writing, by a proxy of a Trustee shall constitute the presence of, or vote or action by, or written consent or dissent of the Trustee.

19. Every proxy shall be executed in writing by the Trustee or by the duly authorized attorney–in–fact of the Trustee and filed with the Secretary of the Foundation. A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the Secretary of the Foundation. An un-revoked proxy shall not be valid after ninety (90) days from the date of its execution unless a longer time is expressly provided therein. In any case, the period of time shall not exceed one (1) year. A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the Secretary of the Foundation.

### *LIST OF TRUSTEES*

20. A list of Trustees entitled to vote shall be maintained by the Secretary.

### *GENERAL POWERS OF TRUSTEES*

21. The Board of Trustees shall manage the business of the Foundation. In addition to the powers and authorities by these By–Laws expressly conferred upon them, the Board may exercise all such powers of the Foundation and do all such lawful acts and things as are not by 1988 NCL, the Articles or these By–Laws directed or required to be exercised or done by the Trustees.

### *SPECIFIC POWERS OF TRUSTEES*

22. Without prejudice to the general powers conferred by the last preceding clause, and the other powers conferred by the Articles, and by these By–Laws, it is hereby expressly declared that the Board of Trustees shall have the following powers:

*FIRST*:  From time to time to make and change rules and regulations not inconsistent with these By–Laws, for the management of the Foundation's business and affairs.

*SECOND*:  To purchase or otherwise acquire for the Foundation any property, rights or privileges which the Foundation is authorized to acquire, at such price and on such terms and conditions and for such consideration as they shall from time to time see fit.

*914450.1*

By–Laws
November 6, 2018
Page 5

       *THIRD*:  To appoint, remove or suspend a President of the Valley Forge Military Academy and College; to conduct, through the Chair and Vice-Chair an annual performance review of the President between May and September of each year with the express purpose of:

      a)  Indicating satisfaction or dissatisfaction with job performance;
      b)  Setting compensation parameters for coming year;
      c)  Discussing President's succession when appropriate;
      d)  Acting re President's successor as necessary; and at their discretion, appoint, remove or suspend any subordinate officers, agents or servants of the Foundation permanently or temporarily, as they may from time to time think fit, and to determine their duties, by Resolution where necessary, and fix, and from time to time change, their salaries or benefits, and to require security in such instances and in such amounts as they may see fit. The Chairman and Vice Chairman will provide a report to the Executive Committee regarding the results of the President's Annual Performance Review.

       *FOURTH*:  To confer by Resolution upon an appointed officer of the Foundation the power to choose, remove or suspend such subordinate officers, agents or servants.

       *FIFTH*:  To appoint any person or persons to accept and hold in trust for the Foundation any property belonging to the Foundation, or in which it is interested, or for any other purpose, and to execute and do all such duties and things as may be requisite in relation to any such trust.

       *SIXTH*:  To determine who shall be authorized on the Foundation's behalf to sign bills, notes, receipts, acceptances, endorsements, checks, releases, contracts and documents.

       *SEVENTH*:  From time to time to provide for the management of the affairs of the Foundation, at home or abroad, in such manner as they see fit, and in particular, from time to time to delegate any of the powers of the Board in the course of the current business of the Foundation to any Standing or Special Committee, or to any officers or agents, and to appoint any persons to be agents of the Foundation with such powers (including the power to sub–delegate), and upon such terms as may be thought fit.

       *EIGHTH*:  The Chairman of the Board of Trustees each year shall appoint the following Standing Committees and may appoint such Special Committees as the Chairman may from time to time determine: Committee on Trustees, Budget, Audit & Finance Committee, Investment Committee, Development Committee, Plant & Facilities Committee, Academy Oversight Committee, and College Oversight Committee.

       *NINTH*:  To authorize debt, including bank credit lines, short-term borrowings, capital leases, or issuance of bonds to finance operations or acquisitions of facilities and equipment.

       *TENTH*:  To engage external auditors to perform the annual financial audit of the Foundation.

By–Laws
November 6, 2018
Page 6

Each of the standing committees shall consist of a chairman, who shall be a Trustee, appointed by the Chairman of the Board and such other members who need not be Trustees, as may be determined by the Chairman of the Board and the chairman of the committee.

The Chairman of the Board may, from time to time, appoint such members of the Board of Trustees and nonmembers of the Board of Trustees to the Standing Committees as well as any Special Committees as the Chairman may deem desirable.

### *APPOINTMENT AND ADMINISTRATION OF EXECUTIVE COMMITTEE*

23. The Executive Committee shall consist of up to eleven (11) members, and shall be determined as follows:

A.  The Chairman of the Board, the Vice Chairman of the Board and the Second Vice Chairman of the Board, if any, shall automatically be members of the Executive Committee by virtue of their positions as Chairman, Vice Chairman and Second Vice Chairman. The Vice Chairman of the Board shall act as Chairman of the Executive Committee. The Second Vice Chairman of the Board, if any, shall act as Chairman of the Executive Committee in the absence of the Vice Chairman.

B.  The Chairmen of the Standing Committees shall automatically be members of the Executive Committee by virtue of their positions as Chairmen of such Standing Committees. The Chairman of the Board shall select such other members of the Board of Trustees to serve on the Executive Committee, provided the maximum number serving shall be limited to eleven (11), including the Chairman, the Vice Chairman and the Second Vice Chairman, if any. The incumbent President of Valley Forge Military Academy and College shall be an ex officio, nonvoting, member of the Executive Committee.

C.  During intervals between meetings of the Board, the Executive Committee shall exercise the functions and responsibilities of the Board of Trustees in such manner as they determine best for the interest of the Foundation in all cases in which specific directions shall not have been given by the Board of Trustees to them. A majority of the members of the Executive Committee, in person or by proxy, shall constitute a quorum for meetings of the Executive Committee, and their decision shall be binding upon the Committee. The Committee may fix its own rules of procedure and shall meet or otherwise communicate as provided by such rules. All actions by the Executive Committee shall be reported to the Board of Trustees at the next succeeding meeting of the Board of Trustees for ratification or approval and shall be subject to revision or alteration by the Board of Trustees, provided that rights of third parties shall not be affected by such revision or alteration.

### *POWERS AND RESPONSIBILITIES OF COMMITTEES*

24. Powers and responsibilities are assigned to the Executive Committee and the Standing Committees as listed below:

914450.1

By–Laws
November 6, 2018
Page 7

A.  <u>Executive Committee</u>

1)  Exercise functions and responsibilities of the Board of Trustees during intervals between the meetings of the Board in all cases in which specific directions shall not have been given by the Board of Trustees to the Committee; expedite transaction of business between meetings of the Board.

The Executive Committee shall have authority to act on behalf of the Board of Trustees on all matters except for those matters which have specifically been reserved for the full Board or the Members by the By–Laws.

a)  The Executive Committee's main purpose is to strengthen the Board's performance by helping it to function efficiently and effectively. Its broad powers shall be used only as necessary and appropriate on routine housekeeping business or on emergency matters that cannot or should not be delayed until the Board's next regularly scheduled meeting or until a special meeting of the Board can be called as specified in these By–Laws.

b)  All actions by the Executive Committee shall be reported to the Board of Trustees for ratification or approval and shall be subject to revision or alteration by the Board of Trustees, provided that rights of third parties shall not be affected by such revision or alteration to the Board at its next meeting for ratification.

2)  Serve as the Board's mechanism for overseeing the institutional planning process and progress toward goals and objectives.

3)  Oversee the work of the Standing Committees. From time to time examine, evaluate and make recommendations regarding the Foundation Board, its composition, organization, size and membership; determine its committee structure and functions. Ensure that the Board fulfills its responsibilities.

4)  From time to time, review and make recommendations to up–date existing By–Laws.

5)  Acting for the full Board of Trustees, to conduct an annual performance review of the President between May and September of each year in accordance with Paragraph 22, *THIRD* of these By–Laws when the Chairman and Vice Chairman do not conduct an annual performance review of the President and provide a report to the Executive Committee. Monitor the President's morale, health and compensations.

6)  Establish a subcommittee to discharge the Board's responsibilities relating to compensation of executive officers and governance matters, including, but not limited to:

-7-

By–Laws
November 6, 2018
Page 8

a)  Assess annually the Board's performance and the performance of the Committees of the Board;

b)   Review, assess and make recommendations to the Board regarding the size and composition of the Board;

c)   Review, assess and make recommendations to the Board regarding corporate governance guideline, including Trustee responsibilities and qualification standards, and annual performance of the board and Committees;

d)   Establish the individual compensation of the executive officers and any other executive or senior officers reporting directly to the President;

e)   Approve goals relevant to the President;

f)   Evaluate the performance of the President in light of the goals;

g)   Establish base salary ranges and general levels of other compensation components for executive employees of the Foundation;

h)   Periodically examine the compensation structure of the Foundation to determine that the Foundation is rewarding its executive and other personnel in a manner consistent with sound business practices of a not-for-profit educational institution;

i)   Make recommendations to the Board with respect to incentive compensation plans for executive employees;

j)   Review, assess and make recommendations to the Board with respect to the Code of Ethics and Conduct for the Foundation; and,

k)   Review and consider approval of any terms and conditions for employment agreement, including the hiring and firing (when involving compensation beyond customary or standard amounts) for executive employees of the Foundation.

7)   Have the ability to confirm or challenge the Budget, Audit and Finance Committee's recommendations concerning the independent auditors.

8)  Receive a report from the Chairman and Vice Chairman regarding the results of the President's Annual Performance Review.

B.  Committee on Trustees

By–Laws
November 6, 2018
Page 9

      1)      Measure the Board's formal and informal organization yearly against the requirements of the institution's strategic plan and the Board's previous evaluation; help the Board determine desired Board composition in terms of influence, diversity and talents.

      2)      Populate the Board with able, dedicated trustees by maintaining a viable list of candidates and by cultivating top prospects; select and nominate candidates for the Board.

      3)      Review the performance of incumbent trustees, particularly those up for reelection, and oversee periodic reviews by the Board of its own performance; review the performance of Board officers annually.

      4)  Nominate officers of the Foundation.

      5)      Work with the Board Chair to establish and oversee the trustee orientation process.

      6)      Work closely with the Board Chair in planning retreats and suggesting other committees.

      7)      Recommend persons upon whom the title of Honorary Life Trustee may be conferred by the Board in accordance with Paragraph 38.

C.  <u>Budget, Audit & Finance Committee</u>

      1)      Review draft operating and capital budgets and make appropriate recommendations for Board of Trustee approval.

      2)      Provide oversight in the execution of the current year budget and alert the Board of Trustees to potential deficits or unusual items of expenditure.

      3)      Review the management of the Foundation's operating funds from a propriety standpoint to ensure a balanced allocation among education, cadet and physical plant maintenance needs is achieved.

      4)      Ensure that a viable long–range financial plan is in place and maintained.

      5)      Review budget and financial policies; when appropriate, recommend changes to the Board of Trustees.

      6)      Review annual audit statements and report significant trends, changes or internal control weaknesses to the Board of Trustees; recommend acceptance of audited statements at fall meeting of the Board.

By–Laws
November 6, 2018
Page 10

       7)      Ensure accounting system and related procedures are adequate to assure proper recording, accounting, reporting and the safeguarding of Foundation assets; recommend accounting and management system improvements as appropriate.

       8)      Recommend appointment/engagement of external auditor, to include definition of nature and scope of auditor's responsibilities.

       9)      Review the written policy on business conduct and potential conflicts; assure distribution to appropriate employees and investigate any major deviations to these policies.

    D.  <u>Investment Committee</u>

Oversee the investment of all funds of the institution, to include Endowed Funds, Baker Trust Restricted Funds, residual or other Restricted Funds, Pension Funds, Debt Sinking Funds and Operating Funds, and review all outside security investments, performing the following in accomplishment of this:

       1)      Monitor performance of the Foundation's investments against stated objectives.

       2)      Review the performance of all investment managers against the objectives and, if appropriate, recommend appointment or change.

       3)      Review, at least annually, the Foundation's investment goals and guidelines and, as appropriate, recommend asset allocation changes to the Board of Trustees.

       4)      Report semi–annually to the Board of Trustees on the status of the various funds invested, to include statements of assets income and performance.

       5)      Review and make recommendations regarding endowment goals and annual income available for operations from endowments.

    E.  <u>Development Committee</u>

Ensure the operation of a vigorous and appropriate fund–raising program for the institution, addressing four component roles:

       1)      Ensure that fund–raising efforts align clearly with mission statement developed by the Board of Trustees:

       a)      Insist that the institution have a clear statement of mission and a current statement of priorities

       b)      Set institutional policies and guidelines for fund–raising

By–Laws
November 6, 2018
Page 11

    2)      Understand the need for fund–raising and have the ability to educate and encourage other board members to participate in raising funds:

        a)     Develop understanding of the role fund–raising plays in the life of the institution

        b)     Educate and encourage board members to participate in fund–raising

    3)      Monitor the operation of the development program, including budget, staff and use of fund–raising counsel:

        a)     Help evaluate the development staff and budget

        b)     Assist in making the most effective use of fund–raising counsel

    4)      Undertake the process of soliciting gifts, helping to set goals appropriate for board members themselves:

        a)  Help set goals for board member giving

        b)  Identify, evaluate and assign gift prospects

F.  Plant and Facilities Committee

    1)      On a broad basis, oversee the institution's land, buildings and equipment

    2)      Ensure the adequacy and condition of land, buildings and equipment required to operate the institution.

    3)      Monitor the development, currency and planning for a comprehensive facilities–management program by the Post Engineer, including for regular maintenance of, facilities policies for near and long–term guidance on use of existing plant, plans for future land–use and space requirements

    4)      See that institution has in place plans for renewal, replacement or removal of components of the physical plant

    5)      Monitor the integration of facilities management with academic, financial and human resource planning

G.  Academy Oversight Committee

    1)  The primary responsibility of the Academy Oversight Committee shall be policymaking for VFMA and oversight of the management of the Academy's resources.

914450.1

By–Laws
November 6, 2018
Page 12

    2)  The Academy Oversight Committee should recognize and accept the following responsibilities:

    a)  Periodically review, approve and advocate for the Academy's mission statement.

    b)  In conjunction with the President of Valley Forge Military Academy & College (VFMAC), select the Dean of the Academy, Valley Forge Military Academy, to lead the Academy.

    c)  In conjunction with the President of VFMAC, support and monitor the Dean of the Academy's performance and establish and review the Dean of the Academy's compensation.

    d)  Charge the Dean of the Academy with the task of leading a strategic planning process, participate in and monitor that process, and approve the Academy's strategic plan.

    Dean of the Academy
    e)  In conjunction with the Board of Trustees, periodically assess the performance of the Academy Oversight Committee, its subcommittees and its members.

    f)  In conjunction with the Board of Trustees, ensure fiscal integrity, preserve and protect the Academy's assets for posterity, and see to it that the Academy has adequate resources to support its mission.

    g)  Ensure the educational quality of the Academy.

    h)  Ensure the Academy policies and processes are current, properly implemented, and managed well.

    i)  Ensure that policies, processes, and instruction are formulated and conducted in an atmosphere of academic freedom.

    j)  Conduct the Academy's business with the highest integrity and appropriate transparency.

    3)  The President of VFMAC and the Dean of the Academy of VFMA shall be *ex-officio* voting members of the Academy Oversight Committee.

H.  College Oversight Committee

    1)  The primary responsibility of the College Oversight Committee shall be policymaking for Valley Forge Military College and oversight of the management of the College's resources.

914450.1

By–Laws
November 6, 2018
Page 13

    2) The College Oversight Committee should recognize and accept the following responsibilities:

    a) Periodically review, approve and advocate for the College's mission statement.

    b) In conjunction with the President of Valley Forge Military Academy & College (VFMAC), select the Dean of Valley Forge Military College to lead the College.

    c) In conjunction with the President of VFMAC, support and monitor the Dean of the College's performance and establish and review the Dean of the College's compensation.

    d) Charge the Dean of the College with the task of leading a strategic planning process, participate in and monitor that process, and approve the College's strategic plan.

    e) In conjunction with the Board of Trustees, periodically assess the performance of the College Oversight Committee, its subcommittees, and its members.

    f) In conjunction with the Board of Trustees, ensure fiscal integrity, preserve and protect the College's assets for prosperity, and see to it that the College has adequate resources to support its mission.

    g) Ensure the educational quality of the College.

    h) Ensure that College policies and processes are current, properly implemented, and managed well.

    i) Foster an environment of independence within the College, such that policies, processes, and instruction are formulated and conducted in an atmosphere of academic freedom.

    j) Conduct the College Oversight Committee's business with the highest integrity and appropriate transparency.

    3) The President of VFMAC and the Dean of VFMC shall be *ex-officio* voting members of the College Oversight Committee.

<u>*ELECTION OF OFFICERS OF THE BOARD*</u>

25. Officers of the Board of Trustees shall be elected at the Annual Meeting and shall serve for a one–year term from 1 July of the election year through 30 June of the following year or until their successors are duly elected and qualified, such officers to be as follows: Chairman, Vice Chairman (and an additional Vice Chairman [the "Second Vice Chairman"], at the discretion of the Chairman, and upon nomination by the Committee on Trustees and election by the Board), Secretary, Treasurer, and such other additional officers as the Board may from time to time determine. It shall be necessary for the Chairman, the Vice Chairman and the Second

-13-

914450.1

By–Laws
November 6, 2018
Page 14

Vice Chairman, if any, to be Trustees, but the Secretary or Treasurer may or may not be a Trustee.

### *DUTIES OF CHAIRMAN OF THE BOARD*

26. The Chairman of the Board shall preside at all meetings of the Trustees; shall have general direction of the business of the Foundation; shall see that all orders and resolutions of the Board are carried into effect; shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the Foundation.

27. The Chairman of the Board shall have general superintendence and direction of all the other officers of the Foundation, and shall see that their duties are properly performed.

28. The Chairman of the Board shall submit a report of the operations of the Foundation for the fiscal year to the Trustees at the Annual Meeting, and from time to time shall report to the Board all matters within the Chairman's knowledge which the interests of the Foundation may require to be brought to their notice.

29. The Chairman of the Board shall be ex officio a member of all Standing Committees and Special Committees and shall have the general powers and duties of supervision and management usually vested in the office of a President of a Corporation.

### *DUTIES OF VICE–CHAIRMEN OF THE BOARD*

30. A. <u>Vice Chairman</u>. The Vice Chairman shall serve as Chairman of the Executive Committee, and shall be vested with such powers and required to perform such duties as the Board of Trustees may determine. In the absence of the Chairman of the Board, the Vice Chairman shall have all of the powers and duties of the Chairman of the Board.

B. <u>Second Vice Chairman</u>. The Second Vice Chairman, if any, shall be vested with such powers and shall be required to perform such duties as the Chairman may determine. In the absence of the Chairman and Vice Chairman of the Board, the Second Vice Chairman shall have all of the powers and duties of the Chairman or Vice Chairman, as the case may be.

### *DUTIES OF THE SECRETARY*

31. The Secretary shall keep or supervise the keeping of minutes of all annual, regular and special meetings of the Board of Trustees. The Secretary shall attend all meetings of the Board, and record all votes and the minutes of all proceedings in a book to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the Board of Trustees, and shall perform such other duties as may be prescribed by the Chairman of the Board, under whose supervision the Secretary shall be. The Secretary shall keep in safe custody the seal of the Corporation, and when authorized by the Board, affix the seal to any instrument requiring the same, and the seal, when so affixed, shall be attested by the Secretary or the Treasurer.

By–Laws
November 6, 2018
Page 15

### *DUTIES OF THE TREASURER*

32. The Treasurer shall be responsible for accepting, on behalf of the Board, the annual audited financial statements and management report from the external auditor and providing an annual report to the Board on the financial condition of the Foundation.

### *DUTIES OF OFFICERS MAY BE DELEGATED*

33. In case of the absence of any officer of the Foundation or for any other reason that the Board may deem sufficient, the Board may delegate the powers or duties of such officer to any other officer, or to any Trustee for the time being; provided, a majority of the entire Board as then constituted concur therein.

### *REMOVAL OF OFFICERS OR AGENTS*

34. Any officer or agent elected or appointed by the Board of Trustees may be removed by the Board of Trustees, whenever in its best judgment the best interest of the Foundation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.

### *TRUSTEES AND OFFICERS MAY RESIGN*

35. Any Trustee or any officer may resign at any time, such resignation to be made in writing to take effect from the time of its receipt by the Foundation, unless some time be fixed in the resignation, then from that date. The acceptance of a resignation shall not be required to make it effective.

### *TRUSTEE AND OFFICER VACANCIES*

36. If there is a Trustee vacancy or if the office of any Trustee, or of the Chairman of the Board, Vice–Chairmen of the Board, Second Vice Chairman of the Board, if any, Secretary or Treasurer becomes vacant by reason of death, resignation or disqualification or otherwise, the remaining Trustees, though less than a quorum, by a majority vote, may choose a successor or successors who shall hold office for the unexpired term, or until his successor is elected and qualifies.

### *REMOVAL OF TRUSTEES*

37. The Board of Trustees may remove someone as Trustee if declared of unsound mind by an Order of Court, or convicted of felony, or for any other proper cause, or if, within sixty days after notice of a Trustee's election, such Trustee does not signify a willingness to serve.

914450.1

By–Laws
November 6, 2018
Page 16

## *HONORARY LIFE TRUSTEE*

38.     The Board of Trustees may, upon the recommendation of the Committee on Trustees, confer upon any person, and particularly upon past trustees, that title of Honorary Life Trustee, which shall be a ceremonial only title, based upon that person's distinctive service to the Board and/or significant contributions to the advancement of the welfare of Valley Forge Military Academy and College.  This ceremonial title of Honorary Life Trustee, shall not have any voting rights nor shall such Honorary Life Trustee be entitled to attend or participate in any executive session and/or confidential meetings of the Board of Trustees nor be entitled to the meeting minutes or other confidential documents which have been reviewed, created or distributed, including but not limited to any meeting minutes related to executive session by the Board of Trustees.  The Honorary Life Trustee shall be invited to attend the general session of any Board of Trustees meetings and also encouraged to attend such other activities and functions to which Trustees are generally invited.

## *ALUMNI ASSOCIATION*

39. The Valley Forge Military Academy and College Alumni Association (the "Alumni Association") was formed many years ago to promote the welfare of Valley Forge Military Academy and College (the "Academy and College") and the establishment of a mutually beneficial relationship between the Academy and College and its alumni.

40. The Constitution and By–Laws of the Alumni Association are hereby adopted by the Foundation and incorporated in these By–Laws by reference. The incorporation of the Alumni Association into the Foundation was formalized by a separate agreement dated May 14, 1993 (the "Incorporation Agreement"). The continued relationship between the Alumni Association and the Foundation shall be governed in accordance with the Incorporation Agreement. The references in these By–Laws to defined terms shall have the same meanings in these By–Laws as in the Incorporation Agreement. The amendment of the Constitution and By–Laws of the Alumni Association shall be subject to ratification by the Board of the Foundation. Further, the amendment of the By–Laws of the Foundation, relating to the Alumni Association, shall be subject to ratification by the Board of Directors of the Alumni Association.

41. The Foundation shall, from time to time, provide the Alumni Association with office space, personnel (including the Staff Officer), supplies and such other support as the President of the Academy and College deems reasonably necessary for the Alumni Association to operate and to fulfill its intended purposes.

42. The Foundation shall establish an account on its books for the exclusive use of the Alumni Association (the "Account"), in the name of the Alumni Association, into which monies (the "Funds") generated by the Alumni Association from its activities will be recorded, the Funds actually being deposited into the general operating bank account of the Foundation. The Alumni Association shall provide a complete accounting of all receipts to the Foundation. The use of the Funds recorded in the Account shall be at the discretion of the Alumni Association; provided, however, at no time shall the Funds be used for purposes which would adversely affect

914450.1

By–Laws
November 6, 2018
Page 17

the status of the Foundation under Section 501 (c) (3) of the Internal Revenue Code of 1986, as amended, or any successor provision thereto; or, the laws of the Commonwealth of Pennsylvania; or, the Articles of Incorporation or the By–Laws of the Foundation; and, will not be used for illegal, immoral, unethical or any other purposes which may be detrimental to the goals or objectives of the Foundation, or the Academy and College, as determined by the President of the Academy and College.

## *AMENDMENT OF BY–LAWS*

43. The Board of Trustees, by the affirmative vote of a majority of Trustees, may alter or amend these By–Laws at any Regular Meeting or Annual Meeting of the Board or at any Special Meeting of the Board, provided that notice of the proposed alteration or amendment has been given to each Trustee.

## *INDEMNIFICATION OF TRUSTEES, OFFICERS, ETC.*

44. Limitation of Personal Liability of and Duty to Indemnify Trustees.  A Trustee shall not be personally liable for monetary damages for any action taken or any failure to take any action, and a Trustee shall be indemnified and defended by the Foundation for any such damages, including reasonable attorneys' fees and expenses, unless:

    (a)  Such Trustee has breached or failed to perform the duties of his or her office as defined in Section 45 below; and
    (b)  The breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

The provisions of this Section 44 shall not apply to (i) the responsibility or liability of a Trustee pursuant to any criminal statute; or (ii) the liability of a Trustee for the payment of taxes pursuant to local, state or federal law.

45. Standard of Care and Justifiable Reliance.

    (a)  A Trustee of the Foundation shall stand in a fiduciary relationship to the Foundation, and shall perform his or her duties as a Trustee, including his or her duties as a member of any committee of the Board upon which he or she may serve, in good faith, and in a manner he or she reasonably believes to be in the best interest of the Foundation, and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his or her duties, a Trustee shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

        (i)    One or more officers or employees of the Foundation whom the Trustee reasonably believes to be reliable and competent in the matters presented;

914450.1

By–Laws
November 6, 2018
Page 18

(ii)   Counsel, public accountants or other persons as to the matters which the Trustee reasonably believes to be within the professional or expert competence of such person;

(iii)   A report or recommendation of a committee of the Board upon which he or she does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee report or recommendation the Trustee reasonably believes to merit confidence.

A Trustee shall not be considered to be acting in good faith if he or she has knowledge concerning the matter in question that would cause his or her reliance under subparagraph (i), subparagraph (ii) or subparagraph (iii), above, to be unwarranted.

(b) In discharging the duties of their respective positions, the Board, committees of the Board and individual Trustees may, in considering the best interests of the Foundation, consider the effects of any action upon employees, upon persons with whom the Foundation has business and other relations and upon communities in which the offices or other establishments of or related to the Foundation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (a) of this Section.

(c) Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a Trustee or any failure to take action shall be presumed to be in the best interests of the Foundation.

46. Indemnification in Third Party Proceedings.  The Foundation shall have the power to indemnify and defend any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or proceeding (hereinafter, "Action"), whether civil, criminal, administrative or investigative other than an Action by or in the right of the Foundation, by reason of the fact that he or she is or was a Representative of the Foundation, or is or was serving at the request of the Foundation as a Representative of another domestic or foreign corporation for profit or not-for-profit , partnership, joint venture, trust or any other enterprise, against expenses (including reasonable attorneys' fees), judgments, fines and amounts paid in settlement actually incurred by him or her in connection with the action or proceeding if, in the opinion of the Board as determined in accordance with the provisions of Section 49, he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Foundation and, with respect to any criminal proceeding , had no reasonable cause to believe his or her conduct was unlawful. The termination of any action or proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the person did not act in good faith and in a manner that he or she reasonably believed to be in, or not opposed to, the best interests of the Foundation, and with respect to any criminal proceeding, had reasonable cause to believe that his or her conduct was unlawful.

47. Indemnification and Derivative Actions.  The Foundation shall have power to indemnify any person who was or is a party defendant, or is threatened to be made a party defendant, to any threatened, pending or completed Action by or in the right of the Foundation to procure a

By–Laws
November 6, 2018
Page 19

judgment in its favor by reason of the fact that he or she is or was a Representative of the Foundation or is or was serving at the request of the Foundation as a Representative of another domestic or foreign corporation for profit or not for profit, partnership, joint venture, trust or other enterprise, against expenses (including reasonable attorneys' fees) actually incurred by him or her in connection with the defense or settlement of the Action if, in the opinion of the Board as determined in accordance with the provisions of Section 49, he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the Foundation. Indemnification shall not be made under this Section in respect of any claim, issue or matter as to which the person has been adjudged to be liable to the Foundation unless and only to the extent that the court of common pleas of the judicial district embracing the county in which the registered office of the Foundation is located or the court in which the Action was brought determines upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses that the court of common pleas or other court shall deem proper.

48. Mandatory Indemnification. Notwithstanding any contrary provision in the Articles of Incorporation, as amended from time to time, or these By-Laws, to the extent that a Representative of the Foundation has been successful on the merits or otherwise in defense of any Action or proceeding referred to in Section 46 (relating to Third Party Proceedings) or Section 47 (relating to Derivative Actions) or in defense of any claim, issue or matter therein, he or she shall be indemnified against expenses (including reasonable attorneys' fees) actually incurred by him or her in connection therewith.

49. Determination of Entitlement to Indemnification. Unless ordered by a court, any indemnification under Section 46 (relating to Third Party Proceedings) or under Section 47 (relating to Derivative Actions) shall be made by the Foundation only as authorized in the specific case upon a determination that indemnification of the Representative is proper under the circumstances because he or she has met the applicable standard of conduct set forth in those sections. Such determination shall be made:

   (a) by a majority vote of a quorum of the Board consisting of Trustees who were not party to the action or proceeding; or

   (b) if such a quorum is not attainable or, even if attainable, if a majority vote of a quorum of disinterested Trustees so directs based upon independent legal counsel in a written opinion.

50. Advancing Expenses. Expenses (including reasonable attorneys' fees) incurred in defending any Action or proceeding may be paid by the Foundation in advance of the final disposition of the Action or proceeding upon written request by or on behalf of the indemnified party to advance such expenses unless it is determined by the Board, in good faith, that he or she is not entitled to be indemnified by the Foundation as authorized in Section 44 through Section 46 above.

By–Laws
November 6, 2018
Page 20

51. Indemnification of Former Trustee.  The Foundation shall provide indemnification for former Trustees in the same manner as provided in these By-Laws for current Trustees of the Board. Each such indemnity may continue as to a person who has ceased to be a Trustee of the Foundation and may inure to the benefit of the heirs, executors and administrators of such person.

52. Insurance.  The Foundation shall purchase and maintain insurance on behalf of any person who was or presently is or hereafter becomes a Trustee of the Foundation or who presently or hereafter is serving at the request of the Foundation as a Representative of another foundation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the Foundation would have the power to indemnify him or her against such liability. If such insurance is not obtained or obtainable at a reasonable cost, as determined by the Board, each such Representative shall be given written notice to that effect.

53. Reliance on Provisions.  Each person who shall act as an authorized Representative of the Foundation shall be deemed to be doing so in reliance upon the rights of indemnification provided for herein.

54. Definition of Representative.  "Representative" as used in those Sections relating to indemnification of Trustees, Officers and etc. shall include any current Trustee, former Trustee, Officer of the Board, committee member of the Board or former Officer or committee member of the Board.

55. Indemnification Exclusion.  Notwithstanding anything in Paragraphs 44 through 54, inclusive, to the contrary, the Foundation shall not indemnify anyone who is being sued by the Foundation.

### *DISCLOSURE OF CONFLICT OF INTEREST*

56. Each Trustee and Officer shall disclose to the Board all the material facts concerning his or her relationship with or interest in any person, firm, corporation or other entity with whom the Foundation has, or proposes to enter into, any contract or other transaction which may, directly or indirectly, result in financial gain or advantage to such member by reason of such relationship or interest at a minimum on a yearly basis. Additionally, where applicable, all trustees are required to disclose potential conflicts of interest not later than when the potential conflict becomes a matter of Board action. Failure to make such a disclosure may be cause for the removal of such Trustee and Officer. The Executive Committee shall have the responsibility to review the information included in the aforementioned disclosure statements.

### *TRUSTEE ETHICS POLICY*

57. Each Trustee and Officer of VFMA Foundation shall preserve and, if possible, act to enhance the assets and reputation of the Foundation, shall diligently promote the Foundation's

914450.1

By–Laws
November 6, 2018
Page 21

interests and shall develop ways for the Foundation to grow in quality and reputation. They shall perform their responsibilities in accordance with the highest precepts of business and education integrity, good business practice and compliance with the law.

58. Each Trustee and Officer shall avoid actual or perceived conflicts of interest and shall disclose certain relationships or interests as described in Section 56 above, bearing in mind the responsibility of Trustees and Officers to make decisions without favor or preference to third parties but solely on the basis that the decision is in the best interest of the Foundation.

59. Contracting for goods and services and the obligation or expenditure of funds shall be executed on the basis of Trustee Committee or Board action and decision, rather than on individual Trustee action or decision.

60. It is the Foundation's policy to comply with all federal, state and local laws applicable to the Foundation and VFMA&C.

914450.1

# EXHIBIT F

# Comprehensive Assessment For Valley Forge Military Academy and College



## CONTENTS

Executive Summary ................................................................................................ 1

Governance ........................................................................................................... 4

The Academy .......................................................................................................... 6

Academy Retention and Recruitment ...................................................................... 9

The College ........................................................................................................... 10

Development .......................................................................................................... 13

The Parent Experience .......................................................................................... 16

The Student Experience ........................................................................................ 16

# Executive Summary

## Governance

1. If the Board does not change in both form and function, the school cannot survive.

2. The Board needs to commit to ongoing training to learn what it means to be an independent school and college board.

3. The Board needs to stop being reactive. The "ready, fire, aim" decision making process has brought the school close to closure.

4. The Board hires a President to run the school's day-to-      day operations. Board members need to stay out of day to day operations of the school and begin following the chain of command if they need information to meet their mission.

5. The Board should recruit new board members outside of the alumni base.

6. All board members must be in a position to make significant gifts to the school and must understand that their seat on the Board requires that they do so on a yearly basis.

7. The Board must develop and adhere to a plan to bring the faculty salaries and benefits to a level that will enable the school to recruit for an increasingly short supply of teachers.

## Overview

1. Valley Forge Military Academy purports to be a competitive college prep school, yet the programs, facilities and services that it offers have not kept pace with similar priced independent schools.

2. Valley Forge Military Academy is geographically well placed for both a small, college prep, boarding and day school.

3. The School cannot rely upon full paying international students to compensate for the fact that nearly all the domestic students are heavily subsidized, mostly through unfunded tuition discounts.

4. The school should find ways to engage the greater community as much as possible.

5. The school should investigate a five-day boarding program.

6. Going forward, the Academy needs to hire experienced independent school and college professionals to run the academic and business sides of the school and whose

1

experience in fine independent schools and colleges reflects the caliber of the experience of those running the military side.

7. The School should investigate a one-year high school post graduate designed for students to gain appointments to U.S. Service Academies and entrance to private four-year military colleges.

## Enrollment

1. The school should carefully review the messages on the website, both intended and unintended to ensure that they accurately reflect the mission of the school and the parents that they hope to attract.

2. The Admissions Office staff needs to be trained in independent school best practices.

3. The School should find a way to bring admissions visitors onto the campus through another

4. The reregistration program needs be very different if it is to be used as a retention tool.

5. The college program needs to be studied so that a more cohesive student body can be developed that reflects the mission of the school.

6. The college athletic program needs to be evaluated to ensure that the program is mission appropriate and that it serves the needs of the student-athletes.

## Development

1. The development office needs to be staffed in a way that reflects their considerable goals.
2. The board needs to begin to plan for a comprehensive campaign to fund initiatives beyond the annual fund.

## Client Experience

1. Parents chose Valley Forge for their sons because of the military model. They are looking for more order and discipline not less.

2. There is a great deal of satisfaction among the parents with the recent leadership changes.

3. The school should look for ways to involve parents in the life of the school in support of their sons

4. The school should empower the cadets to expand the weekend activity offerings.

5. The School should put together a plan to begin to deal with the backlog of deferred maintenance in the physical plant.

6. The athletic program needs to be studied to ensure that it supports not only the mission of the school, but benefits the cadets as indivduals.

7. The Academy should consider recruiting teachers differently, utilizing independent school channels rather than public school sources and actively recruiting veterans who are more likely to understand and support the military model.

## Governance

The school will not survive if the Board continues in its present form and function. Valley Forge Millitary Academy and College is a small independent institution with an endowment of approximately $10 million that is far short of what is necessary to fund the school in times of scarcity. Tuition, room and board is approximately $45,000. There seems to be, however no strategic vision coming from the Board that gives any indication that they grasp this reality.  An independent school and college board has two major responsibilities:

1.  To carefully choose and support the President who is in charge of the day to day operation of the school.
2.  To ensure the financial health and sustainability of the school.

Despite the Board members relatively kind self-appraisal as evidenced by the board surveys, the board has failed in both of these responsibilities. **(See Appendix A)**

While the recent hire of General Lord as President appears to be the right man at the right time, the experience for the class of 2018 was more indicative of the Board's track record. The few Cadets in that class and their parents who were at the school for four years experienced four changes in the President's office. This "ready, fire, aim" approach to decision making is one hallmark of this board.

Enrollment declined 40% at the Academy in the last five years. Relatively steady enrollment in the college came at the expense of decisions that resulted in a fractured student body and 98% of the students receiving significant financial aid, much of it unfunded. Rather than study the problem with the President and develop a strategic plan that would lead to sustainability, the Board became overly involved in the day to day operation of the school. Several mid-level managers reported a board "in the weeds" without really being informed. For a school that stresses the military model, the board's willingness to circumvent chain of command is remarkable. Certainly, there may be rare occasions when a board member needs to interact directly with a faculty or staff member. In those cases, that interaction needs to be cleared first with both the President and the Board Chair prior to the interaction. The exception may be the chairs of the development, enrollment and finance committees who must interact with senior administrators in order to prepare agendas for their committee meetings.

An example of the Board reaching into operations is the recent appointment of the Dean of the Academy. The school desperately needs experienced independent school professionals to take the Academy forward. Even if Dr. Lea was the right candidate, the process of placing him permanently in the position was flawed. Independent schools do not replace senior leadership without a national search. This is even more important at a time when the school is experiencing a downturn in enrollment. An inclusive, transparent process needs to be put in place by the President. If the Board wants to suggest candidates, that is their prerogative, as it is the prerogative of every alumni, parent, faculty and staff member. But the process and the decision rests with the

4

President. If he wants input for key hires, he can form a search committee. Unless asked, the Board needs to remain in their lane.

The Board has not executed its fiduciary responsibility to the school. The school is nearly $7 million in debt and running a deficit in this year's budget.

There are too many Alumni on the Board. Alumni always look at an institution through the lens of what it was. In the case of the board, they are driven to volunteer to assist the school based on the positive experiences that they had as cadets. The problem is that the Valley Forge is not going to survive by looking backwards. What is needed is a new vision for a small, independent, college prep boarding school in the military tradition. That does not mean the loss of connection to the customs and traditions of the school. For example, potential source of board members are service academy graduates who have gone on to great success outside of the military after they have completed their service. These are people who would see value in the mission of the academy and might bring a fresh perspective to the work.

The bottom line is this. The Board finally appears to have hired a President who understands his job. He has begun to assemble the leadership team that can address the issues facing the Academy and the College. The board now has one short term priority: to give or get the financial resources that will give the President the time that he needs to move the school into the 21st Century and toward long-term sustainability. Once the financial runway is built, the Board must turn its attention to an inclusive strategic planning process.

5

## The Academy

Valley Forge Military Academy is a small boarding school for students in grades seven through twelve. This means that the market in which the Academy competes is the small independent boarding school market whose target is parents with the ability to pay over $44,000 per year for precollegiate education and are inclined to send their sons to school away from home. It is a tough sell for any school. Valley Forge's standing as a military academy is a double-edged sword. On the one hand, there are going to be parents who immediately reject the military model. On the other hand, the school has a unique brand and niche that makes it one of the few choices like it in the country. The website **Boarding School Review,** one clearinghouse for Boarding School Information for potential parents and students ( https://www.boardingschoolreview.com/ ) Lists eighteen Military Boarding Schools in the country, ranging in size from 80 to over 800 students.

Valley Forge Military Academy is shrinking.

|         | Grade 7 | Grade 8 | Grade 9 | Grade 10 | Grade 11 | Grade 12 | Total | Amt Change | Percent Change |
|---------|---------|---------|---------|----------|----------|----------|-------|-----------|----------------|
| 2013-14 | 16      | 34      | 60      | 72       | 73       | 78       | 333   |           |                |
| 2014-15 | 10      | 29      | 41      | 68       | 67       | 68       | 283   | -50       | -15%           |
| 2015-16 | 11      | 21      | 41      | 52       | 64       | 71       | 260   | -23       | -8%            |
| 2016-17 | 3       | 22      | 32      | 42       | 59       | 59       | 217   | -43       | -17%           |
| 2017-18 | 5       | 15      | 39      | 42       | 42       | 58       | 201   | -16       | -7%            |
|         |         |         |         |          |          | Total    |       | -132      | -40%           |

As of October 1, there were 201 Cadets enrolled at the Academy. This represents a 7% decrease over the previous year, and a 40% decrease over a five year period. There are many reasons for this. Chief among them was the fact that the Academy was not living up to its promises to parents who sought the school for its commitment to teaching the five cornerstones: Academic Excellence, Character Development, Personal Motivation, Physical Development, and Leadership. Parents in the focus groups reported little discipline, students cutting classes, disruptions in class, little supervision of study halls, and reduced opportunities to participate in athletics.

It should come as no surprise then that 63% of the school receives some form of financial aid, much of it unfunded, effectively lowering the average tuition collected per cadet to less than $28,000. The school cannot long continue to subsidize an average of $16,000 per Academy Cadet.

Like many American boarding schools, the Academy depends upon the recruitment of full paying international students to help balance the budget and make up for the policy of heavy discounting for U.S. Students. This is problematic. The competition for International students is fierce and the demand for mission appropriate international students for Valley Forge greatly outpaces the supply of those students. Most parents of international students rely upon the assistance of agents to place their children in schools overseas. The parents of top tier students are concerned first with the college placement record of the schools that they consider and the agents are keenly tuned to the demands of their clients. Besides the Service Academies, which foreign nationals are not eligible to attend, Valley Forge does not consistently place students in the brand name, high profile universities that the parents of top tier international students demand. Because of that, the school is not attracting those students. Other factors impact the supply of mission appropriate international students including:

6

1. The increase of high-quality education at home. Schools in sending countries such as China are being built at a remarkable rate and the academic programs mirror those of top tier U.S. independent schools. Parents in those countries now have options that were not available less than a decade ago.
   (http://www.universityworldnews.com/article.php?story=20180209120222866 )

2. The current political climate is not encouraging parents to send their children to the United States when there are other more welcoming alternatives.  The World Education Service in a recent article stated that:

   *The American Council on Education (ACE) and 32 other higher education associations, for instance, submitted an amicus brief to the U.S. Supreme Court when the court took up hearings on Trump's latest travel ban in April 2018 that noted that the ban "sends a clarion message of exclusion to millions around the globe that America's doors are no longer open to foreign students, scholars, lecturers, and researchers." It "jeopardizes the vital contributions made by … [these individuals] by telling them in the starkest terms that America is no longer receptive to them."*

   https://wenr.wes.org/2018/05/latest-sevis-data-number-of-international-students-in-the-u-s-is-declining

The Challenge then lies in attracting more full paying domestic parents to the school. This requires a change in mindset. As enrollment has declined steadily, it is easy to blame increasing tuition as the cause of the exodus. In fact, the problem does not lie with the cost. Tuition, room and board at Valley Forge actually represents a relative bargain in the small boarding school world where costs can reach well over $50,000. The problem lies with the value proposition. The Academy has quite frankly not kept pace with the small boarding programs with which it competes in terms of program, facilities, services or outcomes. Valley Forge Military Academy is a shadow of its former self in terms of enrollment because it remains a mirror of its former self in terms of programs, facilities, and services. This will be discussed in greater detail in the section about the student experience.

**The Market**

Valley Forge Military Academy sits squarely in the middle of the eastern megalopolis that extends from New York to Washington D.C. Within a mile of the campus is a train station providing reliable transportation to 30th Street Station in Philadelphia where Cadets and their families can access trains to New York to the north and Washington DC to the south. Several major interstate highways pass within a few miles of the gates of the school. Simply put, the Academy is ideally placed for a small boarding school. Given the geographic advantages, investigating a five-day boarding program makes a great deal of sense.

The Academy also sits in the middle of a prime independent day school marketplace. Several independent schools charging nearly the same amount for day school as the Academy charges for boarding, including Episcopal Academy and Haverford School are thriving within a short drive of

7

the Academy. The difference is that those schools have developed a reputation in the area for academic excellence that the Academy does not enjoy. However, as the Academy's value proposition increases the following graph indicates that there are over 8500 high school students living in households with a median family income of over $106,000 in the school districts immediately surrounding the Academy.

| | Conestoga | Radnor | Marple-Newtown | Haverford | Lower Merion | Upper Merion | Total |
|---|---|---|---|---|---|---|---|
| Enrollment | 2062 | 1177 | 1165 | 1709 | 1440 | 1142 | 8695 |
| | | | | | | | |
| Median Household Income | $121,687 | $106,209 | $82,596 | $99,043 | 117,914 | $80,419 | $102,626 |

The Academy could begin outreach to the community by publicizing events on campus like parades and concerts. They could also organize community appreciation events that will enable members of the local community to be on campus and interact with the Cadets in  less formal way.

The Academy should actively publicize in the local market its success rate placing graduates in the Service Academies. A significant number of students and parents in both the boarding and day school markets would be interested in a school that was a conduit to the Academies. A curriculum designed with Service Academy admission in mind would appeal to both students currently attending high school as well as those who need an extra year of high school in order to improve their record for admission

The Marketing and Communications Overview contained in Appendix A provides an in depth look by the Healey Director of Communications, Valerie Asuncion, at the marketing effort of both the school and the college. She is impressed by the work produced by Mary Heller and believes that the "Leaders at Every Level" will resonate in the educational marketplace. There are a number of questions however the essential question is this:

*Is your well-oiled machine on the right track? Have you agreed across the organization about whom you are trying to reach and what you are promising them? Are you answering the right questions for the prospects most likely to buy what you're selling?*

As an example of a well-oiled machine on the wrong track, a look at your website reveals the following clear messages:

1. **The School is not marketing to full paying parents**. The opening photo on the website's homepage tells the reader that "Valley Forge Military Academy awards more than $4 million in scholarships and financial aid annually." That message is not directed at the people who can afford to pay $45,000 per year for precollegiate education. It signals that Valley Forge is expensive and the school understands that they have to soften the blow. It also tells potential parents that they can come into the school expecting not to pay what it costs.

2. **This is not really a college prep school**. The second page of the website says that 95% of the class of 2017 went to college, while 3% joined the military and 2% entered the workforce. Those would be impressive numbers if the school were a comprehensive

8

public high school. It's a tough sell for a parent to pay nearly $200,000 over four years of education for their child to join the Army.

## Academy Retention and Recruitment

Like many of the people in positions of authority at the Academy, the Director of Academy Admissions had no experience in independent school admissions prior to taking the job. Because he is well organized, committed to the mission and has the requisite skills to be successful promoting the Academy. The Academy should invest in training for him. The Association of Independent School Admissions Professionals ( https://www.aisap.org/home ) provides resources for both new and experienced admissions professionals.

Marketing to Full Pay (http://www.marketingtofullpay.com/ ) is run by Claude Anderson, Dean of Enrollment at Northfield Mount Herman School in Massachusetts. Generally recognized as one of the top independent admissions professionals in the country, Claude runs workshops periodically around the country.

Reregistration is not well handled at the school. It should therefore not be surprising that retention has been an issue. Reregistration begins in March with an email to parents requesting that they complete online course registration with their sons. There was a follow-up email every two weeks subsequent to the initial email blast. The Dean of Enrollment then spent the summer contacting any parent who had not reregistered. This is a bad system on lots of different levels.

1. In a college prep school, the Cadet's academic advisor or college counselor should work with the Cadet to ensure that the proper courses are being taken. That's what parents are paying for.
2. In a school that is experiencing retention issues, the process should be happening much earlier. If a parent is considering leaving the school, the school needs to know that long before they fail to respond to a couple of emails in March and April. By that time, there is one month of the school year to address issues.
3. If course selection does not begin until March, and continues through the summer, staffing for the new school year can't be properly planned.

The Academy should consider the following revised procedure:

1. The Course selection process should be completed by each Cadet with his academic advisor or college counselor by February 1.
2. The advisor should set a phone appointment or conference with the parent to apprise them of the course selection.
3. The advisor will then hand the parent the contract for the coming school year with a March 1 return deadline.
4. Incentivize parents to return their contracts on time by offering a reduction in the registration fee for contract returned by March 1
5. On March 2, phone calls are made to parents who have not reregistered to determine the cause. Those calls should be coming from either the President, the Superintendent, the Commandant or the Dean of the Academy.

## Recruitment

On October 10, a member of the Healey Education Foundation Staff called the Academy Admissions office and conducted a secret shopper interview. The results were mixed. The call was answered by Anne Brennen. Her approach was courteous, polite and welcoming, there was little to connect the caller to the school. The caller was not asked about her interests and needs. She wasnot asked how she heard about Valley Forge. When asked about a tour, she was informed of the Open House on November 10 and directed to register online. When the caller asked about day vs. boarding, she was told that it depended upon the needs of the parent. Yet the caller was never asked to define those needs and, as a result, the caller did not get an important question answered. She was then directed to the website for more information. There has not, as yet, been any follow-up.

When a prospective parent calls the school, the office must assume that they have read the website. It is up to the admissions office to determine:

1. **How they heard about Valley Forge.** The answer to this question can help to determine the effectiveness of various marketing efforts.
2. **What interests the prospective parent about the Academy.** This can help to direct the parent to people on the campus who can assist in recruiting the new student.
3. **When are they available for to visit the campus.** Directing a parent to an Open House is not necessarily a bad thing. But rather than sending the parent to a website to sign up online, the question is, "IS November 10 a good day for you? If it is, let me sign you up for our Open House." Then a follow-up card or email to confirm attendance is in order as is a follow-up call after the event. If the Open House is not convenient, "When is a good time to schedule a visit to the campus for you and your son?"

Admissions is sales. And the admissions staff needs to understand that every call is an opportunity to sell Valley Forge.

# The College

The College suffers from an identity crisis. The college has four identifiable groups in one institution and they often perceive that they have conflicting interests.

1. **The Early Commissioning Program** students are committed to service in the United States Army after graduation. They wear uniforms that are different from the other members of the corps and, because of training commitments are not generally part of the Corps leadership.
2. **Members of the Corps of Cadets** are full time students who live on campus. It is from this group of students that the Corps leadership comes.
3. **Commuter Students** are not part of the corps. Rather they live off campus and come to school for class.
4. **Athletes**  are generally recruited to play a sport at the school. Athletes can be either commuters or members of the Corps. Some hold leadership positions.

Virtually no college student pays the full tuition, room and board. Early Commissioning students are paid for by the Army. Athletes receive full, unfunded tuition scholarships. Members of the Corps and commuters are often provided financial aid, both funded and unfunded. This does not mean that the cost of education is covered. A significant number of students, many of them recruited athletes, take out significant loans in order to cover their expenses at the school. It is not uncommon for a student to graduate from Valley Forge with $40,000 in debt. That's not defensible.

On paper, Valley Forge Military College costs over $50,000 to attend. That's actually a tough number to find. The only way that I could find the full cost of tuition, room. board and books was to fill out the form on the webpage and providing a great deal of information. Given that the fictional parent who filled out the form was from a family of four making $65,000 and living in Pennsylvania, the net tuition came to $37,000 after a $15,000 grant in aid. That's a hefty price tag for a junior college. By comparison, an academically talented student whose family makes $65,000 would be fully funded at the University of Pennsylvania with no loans expected.

The College is simply not sustainable in its present form. Except for the Early Commissioning Program, there is no value proposition. If the cybersecurity program operated in a state-of-the-art facility, there may be a case to be made for attendance in that program, but not at a price that a student would be asked to pay at a top private four year university.

The athletic program is a financial drain on the college with little return on investment. The athletes are actively recruited, often without the involvement of the Admissions Office. I was told by the Senior Director of Admission that it was not uncommon to see a coach escorting a recruit on campus without having that recruit come through the Admission office. When an admissions counselor finally does get the opportunity to talk with the recruit and discuss the military obligations in the Corps of Cadets, they hear things like, "The football coach told me I wouldn't have to do all that stuff." It should come as no surprise then, that the athletes are generally not model cadets, although some do buy into the program after they arrive and more than one has risen to a position of authority within the corps.

The school needs to study its entire athletic program to ensure that it meets the needs of the athletes as well as filling seats at the college. The facilities and program are not conducive to high powered junior college athletics. College football players, for example, typically gain muscle and weight as a result of highly developed weight room workouts and increased calories in the form of training tables with large quantities of protein rich meals. The football players that I spoke to at the focus group are losing weight. This is a result of a high carb diet with insufficient calories and missed meals due to a rigid meal schedule that often finds them with leftovers or no food at all by the time they get out of practice.

The commuter program was implemented as a way to increase enrollment without a lot of thought as to how it would affect the Corps of Cadets. While there may be a way to effectively implement a commuter program at a military college, the program is going to take a great deal of time and study to get right. It would be worth the College's time to do that.

As is true in the Academy, people have been placed in positions of authority at the college who do not have the experience or training to do their job. The Dean of the College is very bright, understands the inner workings of the college better than anyone on campus, has a passion for

the mission and is completely underqualified to be the Chief Academic Officer at a $50,000 per year academic institution.  She has never taught at the college level and holds no administrative degrees or credentials.

The Dean's appointment as well as the Senior Director of Admission's appointment are the result of hiring practices that devalue the academic program of both the Academy and College. They were both promoted to the positions they currently hold from junior level positions in the college. In the case of admissions, she was virtually the last woman standing when her boss left his position with no notice in the middle of the night. It's hard to imagine on the military side of the school, a junior TAC being promoted to the Commandant's position.

The result is a fractured program in the college that needs to be fixed.

12

# Development

The development office was rated 0-5 on the following ten key performance indicators. A O reflects no evidence of the performance indicator and 5 reflects an overwhelming strength.  The Ratings and reasons for those ratings are below:

1. **The school has a work plan including clearly defined job descriptions and documented role responsibilities for all members of the office?**

   **Score: 4**

   The development office is well managed and has a work plan that outlines the development goals for the year and the path to achieve the goal. The Vice President of Advancement has worked with a steadily shrinking staff to ensure that all of the work necessary to achieve the goals is being completed.

2. **The development program is staffed and funded to meet fundraising expectations?**

   **Score: 2**

   The development office is grossly understaffed for the size of the goal that they consistently are given. The Staff with a goal of annual goal this should should at a minimum include:

   - The Vice President for Development
   - A Major Gift Officer pursuing gifts above $25,000 and planned gifts
   - An Annual Fund Director ensuring that the Forge Fund reaches goal and feeding prospects to the Vice President and Major Gifts Officer
   - Alumni Director who coordinates all alumni outreach and plans alumni and executes alumni events.
   - A Development Assistant who takes care of gift entry, stewardship and the donor management data base
   - A Development Assistant who functions as administrative assistant for the Vice President and Major Gifts Officer as well as providing assistance as needed to the Annual Find Director and the Alumni Director.

   Development is one of only two revenue streams to the school. As of this writing, the Forge Fund stands at 28% of goal. This is one example of literally being penny wise and pound foolish. Fully staffing the development office, given the management of the program will no doubt lead to increases in attainment.

3. **Development communications are sufficiently financed to meet the fundraising expectations and consistent with the school's message and branding?**

   **Score: 3**

   Development Communications are improving. Collateral materials are being produced that will support the school's development efforts

4. **An identified staff member, with involvement in planning the school calendar, controls all fundraising activities, including other internal or external campaigns?**

   **Score 4**

   The development office would like to coordinate all fundraising activities, but their efforts are not always successful. Athletics is one area where the solicitation of gifts is not always well corrdinated. The Vice President should be firmly in charge of all development efforts

5. **The  office has a plan for moving donors through the gift pipeline towards greater support, while simultaneously tracking and replacing those who move to a new level?**

   **Score: 2**

   In a mature development operation, the Annual fund manager is able to analyze giving data as well as do prospect research on a broad range of donors. Because current staffing does not provide the time necessary for that to happen, it is difficult to tailor annual fund solicitations for anyone other than the major gift prospects.

6. **Does the development work plan**
   - **focus on increasing total donors?**
   - **use gift bands ($1-$100, $101-$250, etc.) as a metric to broaden the base of the donor pyramid?**
   - **provide incentive to find lost alumni?**
   - **ensure appropriate attention to acquiring new donors**

   While gift bands exist for the Forge Fund, staffing restrictions preclude some best practices from being put into place, including working to move donors from one level to the next and systematically increasing the donor pool.

   **Score: 3**

7. **Does the office provide programs and events that engage and cultivate alumni, parents/grandparents, corporate donors and philanthropic organizations?**

   **Score: 3**

14

The office does provide programs and events to engage parents and alumni. It may be possible to use existing school events, such as parades or concerts, to target donors from the community.

8. **Does the office have accurate information (demographics, employment and interests) on school alumni, donors and prospects to effectively target and engage them?**

   **Score: 4**

   The School uses eTapestry for prospect management. This is a sophisticated program. In order to get the most out of the investment in this tool, it is necessary for a staff member to have responsibility for management of the database. Current staffing does not allow that to happen.

9. **Are the Board members knowledgeable about the fundraising process and the roles in the organization?**

   **Score: 2**

   One of the Board's primary functions is to ensure the financial viability of the school. While some on the Board understand that role and in addition to giving generously, assist in identifying or cultivating donor prospects for the school, most do not.

10. **Is there a direct communication and relationship between enrollment, marketing, academic and other administration support functions to assist in the fundraising needs and efforts?**

    **Score: 4**

    The Vice President for Development works closely with the marketing and communications team to ensure consistent messaging across platforms and on collateral materials.

    **Total Score:  31**

The development office has a heavy lift on an annual basis. Two things make this possible. The first is the strong management and major gift cultivation by the Vice President for Development. The second is the strong relationship between the Vice President and the President. The President understands his role in development and he looks to the Vice President to set the table for solicitation of major gifts.

The problem is that without careful strategic planning, year after year the development office is simply plugging a hole in the bottom of the revenue bucket. As the Board begins to think strategically, part of the plan needs to include a comprehensive campaign that will enable the school to address infrastructure needs as well as fund such initiatives as financial aid and program development.

## The Parent Experience

Parent surveys reflect a great deal of satisfaction with the program, particularly with the leadership changes that have recently taken place. (**Parent survey results can be found in Appendix B.**) There is support for the direction of the school and the renewed emphasis on discipline and accountability in the Corps. The parents in the focus groups expressed similar sentiments. They cited examples in the past of cadets not held to account for being disruptive in class or cutting class completely.

In the focus groups, more than one parent expressed frustration at the lack of opportunities for parent involvement except for fundraising events. They also expressed frustration at having to choose between going and watching their sons play an away game on Parents' Weekend or going to the Friday night parent event. Since they could not do both, they chose to support their sons. This is such an easy thing to fix. On a big weekend like Parents Weekend, no team should be playing away. Standard independent school best practice is to schedule games for all teams at home and staggered so that all athletes have the chance to play in front of a crowd.

A word of caution about all of the support. As pointed out in the enrollment section, the school has not kept pace in programs, facilities, and services with other small boarding schools. One example of this is the advertisement of tutoring services and academic support on the school's website. If you are asking parents to pay $1250 a week to go to school, they have a reason to assume that is an all-inclusive price.  Faculty members should be providing office hours during the day so that students can get extra instruction, if they need it, at no additional cost. To the faculty's credit, 60% of the faculty rated the accessibility of extra help a 4 or 5. Less than 13% rated this a 1 or 2.

Given that the faculty appears to be handling the majority of the extra help issues in house, it makes sense to remove the tutoring ads from the website. Most independent schools keep lists of qualified tutors for the rare case that the faculty member charged with teaching the student cannot meet the needs, for example in the event of extended absence. They then share the names with the parents on an as needed basis.

## The Student Experience

The perception is that the college students choose to be at the school while the Academy students are sent there. There are lots of reasons that a boy might choose to attend VFMA and a parent may consent to send him. The school should be explicit about what those reasons might be. Of all the competition, nobody does this better than the Army and Navy Academy. Their website is worth a look ( https://armyandnavyacademy.org/).  They emphasize school first. Parent and student testimonials are weaved throughout the website and interesting articles about the advantages of boarding school, single sex education, and a military education are found on the admissions pages. The cost of the school is readily apparent.

16

The physical plant is impressive at first glance. Unfortunately, for many visitors the first glimpse of the Academy is through the back door. The Admissions office entrance is accessed by a service road that runs at the very back of the campus. Once inside, the buildings appear dated and poorly maintained. The barracks do not appear to be much changed for decades. The dining hall is not an inviting place to eat. The classrooms all have a metal grate covering the windows on their doors.

A new coat of paint is relatively inexpensive and can work wonders in updating the look of the space. Cadet labor, either volunteer or forced, can be put to good use. But the school needs to figure out a long-term plan for updating facilities. 21st Century Boarding Schools do not look like 20th century boarding schools.

Academy athletics is an issue. The inability to consistently field teams is going to cause students to leave. At the middle School level, the creative solution of finding a way for an eighth grader to play soccer in the local recreational league could be expanded to more students in more sports. This is also an area where a program designed to place high school students and high school post graduate students into Service Academies and other private military colleges could help the school. Those students tend to be athletically inclined and if the same effort is placed into bringing them to campus as is currently placed on recruiting junior college players, the Academy's stock is likely to rise.

The Academy and College are both primarily made up of students who live on campus. Yet there is very little for Cadets to do. Vermont Academy is a small boarding school in the middle of nowhere in Saxon's River, Vermont. Their website ( https://www.vermontacademy.org/page/student-life/residential-life) provides the following overview of the weekend program:

*So what happens on the weekends? In a word, plenty. In addition to our annual events like Winter Carnival and Casino Night, there are dances, concerts, theatrical productions, volleyball games and outdoor fires in our Nick Grout '03 Memorial Fire Pit. Off-campus activities can include hiking and camping trips, as well as athletic and cultural events, such as lacrosse games at Dartmouth College, or Blue Man Group in Boston. Trips to the mall and visits to Burlington can also be found on the weekend schedule. Most weekends include Saturday night at the movies and, during the winter, Sunday skiing and snowboarding at Stratton or Okemo mountains.*

This is the range of activities that boarding school parents and students expect. On a recent visit to the campus I came across the schedule of activities for October. They consisted of a bus to the King of Prussia Mall on each Saturday. The Cadets expressed frustration with the lack of activities available to them, particularly on closed weekends when they cannot leave the campus. One cadet talked about looking at old yearbooks and seeing dances, clubs and activities that are no longer part of the program. The Corps is supposed to be Cadet led. The Academy should consider having Cadets organize clubs and activities, both on and off campus, in which their peers could, with adult supervision, participate.

A school is only as strong as its faculty. As teacher vacancies occur, by requiring teaching credentials, the school is searching for candidates from the same sources used by the public schools. This is almost certain to provide candidates who are neither committed to the military model of education or likely to stay at the school once a higher paying public school opening occurs. The result is that the quality of the faculty is uneven at best. A public school mentality permeates. Faculty members are hard to find on campus outside of school hours.

17

Because there is an expectation that independent school teachers will contribute to the life of the school outside of the classroom as coaches and club advisors, the school should recruit faculty the way that independent schools recruit. Rather than being concerned with a teaching certification, independent schools seek graduates from strong colleges and universities with degrees in the subject areas of need. Because of Valley Forge's unique place in the market, it might also actively recruit veterans who may be interested in teaching and coaching but are not interested in pursuing a teaching credential. These people would be more likely to understand and support the military model outside the classroom.

By the same token, the school must demonstrate a commitment to the faculty. The Board must develop and adhere to a plan to bring the faculty salaries and benefits to a level that will enable them to recruit for an increasingly short supply of teachers. Many small boarding schools house a majority of their faculties on campus. This helps to build community. One possibility is to renovate at least a portion of the currently closed dormitory and convert it into faculty apartments.

# EXHIBIT G

**IN THE MATTER OF VALLEY FORGE MILITARY ACADEMY**
**INDEX OF LETTERS/AFFIDAVITS FROM PARENTS (4-1-2019)**

1.    Memorandum of Record of Nestor Barreto dated 3-20-2019

2.    Affidavit of Allan  C. Booz dated 3-25-2019

3.    Letter from Tammy Coulston dated 3-22-2019

4.    Letter from Debbie Daniels (undated)

5.    Affidavit of  Diane Daulerio dated 3-24-2019

6.    Letter from Mary Dillard dated 3-25-2019

7.    Affidavit of  Katherine S. Diorio dated 3-22-2019

8.    Affidavit (email) of Craig Farmer dated 3-21-2019

9.    Affidavit of Elana Yaron Fishbein dated 3-21-2019

10.   Letter from Walter M. Franke dated 3-21-2019

11.   Letter from Naomi Freeman dated 3-21-2019

12.   Letter from Kimberly Graham dated 3-21-2019

13.   Affidavit  of Amy Howe dated 3-23-2019

14.   Affidavit of Margaret Howlett dated 3-21-2019

15.   Letter from Rebecca A. Hall and T. Max Hall, III dated 3-20-2019

16.   Affidavit of Howard Kapustein dated 3-24-2019

17.   Letter from Shannon Koebbe dated 3-21-2019

18.   Letter from Beth Marotta dated 3-22-2019

19.   Declaration of Michael D. Miscoe and Susan K. Miscoe  dated 3-25-2019

20.   Affidavit of Kristin Moore (undated)

21.   Affidavit of Scott K. Newell dated 3-20-2019

22.   Affidavit of Mark Oskowiak dated 3-22-2019

23.   Affidavit of Kathleen McCall Readinger dated 3-21-2019

24.   Letter from Keith and Sylvia Reihl dated 3-21-2019

25.   Affidavit of Francis B. Reynolds dated 3-25-2019

26.   Letter from Casey William Roe dated 3-21-2019

27.   Letter from Patricia Sacchetti dated 3-21-2019

28.   Affidavit of Jeannie Sandy dated  3-21-2019

29.   Letter from Suzanne Zigo  (undated)

LTC (R) NESTOR BARRETO
2900 Elizabeth Champion Court
Williamsburg, VA 23185
(757) 775-1972
E-mail: LTCNICKBARRETO@GMAIL.COM


March 20, 2019


MR. THOMAS LENO
Legal Counsel, Valley Forge Military Academy & College (VFMAC)
Parents Representative


Memorandum for Record:  2018/19 Academy Cadet Enrollment Status

The purpose of the memorandum is to let it be known that our family will delay
reenrollment of our son, Jay Barreto, until such date when Major General (MG)
Walt Lord is reinstated as the President of VFMAC.  In the event the VFMAC
Board of Trustees (BOT) fails to secure his return per the concessions specified in
his letter of resignation submitted to the BOT, our son will come home to VA to
finish high school elsewhere.  This is not our desire endstate, however, we do not
believe VFMAC can remain financially solvent without the credible and proven
leadership rendered by MG Lord these past ten months.

In 2017, as parents of an out-of-state cadet, we bought into MG Lord's vision for
significantly improving VFMAC daily operations and plans on future initiatives.
In our opinion, ever since becoming the face and voice of VFMAC, MG Lord has
consistently provided steadfast leadership and guidance towards such an end with
outstanding results.


Respectfully,

Nestor Barreto

WITH THE ARMED FORCES AT JOINT BASE
LANGLEY-EUSTIS, VA 23665
Acknowledged before me on 20 March 2019
By: Nestor Barreto
Melissa Hudgins
Notary Public by Federal Statute 10 USC § 1044a

NOTARY
PUBLIC UNDER
TITLE 10
US CODE 1044a

OFFICE OF THE STAFF JUDGE ADVOCATE

Re: Leadership Major General Walt Lord

March 25, 2019

I am the parent of Gavin S. Booz Medical Sgt. Valley Forge Military Academy and College (VFMAC)
8th Grade Academy cadet, 14 Years Old
Field Music
My son's residence is 29 W. Mt Kirk Ave Eagleville, Pennsylvania 19403

The current status of the Board of Trustees is crippling the advancement of VFMAC.  And as the parent of a 2nd year cadet planning for the next school year we are being misled by the current procedures and questioning the ethicality of the Board of Trustees in their decision making.
If Major General Walt Lord is not reinstated, we will not reenroll our son and continue to support VFMAC.
Major General Lord sets the tone at Valley Forge, while there are many that make this team of people work, he provides a standard of excellence that is second to none.  My son is inspired this year in a way that is extraordinary in comparison to his first year at VFMAC.  Gavin is sought out by administration as a leader among his peers.  Gavin is fortunate to have been encouraged personally by Major General Lord and every single time MG Lord models this character.  These gestures have changed the course of Gavin's life and faith, empowering him to rise up to challenges; by raising expectations.  MG Lord has an outlook and vision for VFMAC that can have far reaching effects given the ability to do the job he was hired to do. He is steady voice on social media and recruiting new students.  The numbers are real and on paper.  MG Lord is impeccable with his word and has ensured answers when there are questions and concerns.

Major General Lord has created an environment of integrity and great morale.   He has made himself available and reached students on a daily basis, making sure to eat with them in the mess hall and invite them to events as well as opening his home to parents, clubs like community service and regimental band students, of which my son is a part.  Gavin has been inspired by MG Lord and his vision and possibility for Valley Forge Military Academy and so am I as a parent.   Gavin shares his positivity and pride vehemently with our community.

Allan C. Booz
29 W. Mt Kirk Ave
Eagleville, Pennsylvania 19403
215-669-7055

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Larry L. Brown, Notary Public
East Norriton Twp., Montgomery County
My Commission Expires April 30, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

I, Tammie M. Coulston, personally appeared before the undersigned notary public make the following statements:

Our son Matthew Sean Coulston, age 15, grade 9, attends Valley Forge Military Academy for the 2018-2019 school year.

Our address is 60 Simmons Creek Lane, Enola, PA 17025.

Matthew was enrolled to attend Carson Long Military School in New Bloomfield, PA for this school year. The school was unable to continue operations because of low enrollment and finances. Due to the referral from Carson Long, we enrolled Matthew at VF. We met Major General Lord in August at the return of school. He clearly communicated his vision for the upcoming school year. His vision is exactly what we expected a military academy to represent. We were encouraged that Matthew would be a part of a school on the rise with such strong leadership.

If Major General Lord is not reinstated, we will need to reevaluate whether our son Matthew will return for the upcoming school year. If the administration removed military aspects from Valley Forge Military Academy or enrolled students as non-cadets, we would withdraw our son.

Sincerely,

*Tammie M. Coulston*

Tammie M Coulston
March 22, 2019

*Laurie Combs*
Notary

*Laurie Combs*

Date March 22, 2019
State PA
County Cumberland
Notary expire: 8-22-2021

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Laurie Combs, Notary Public
Middlesex Twp., Cumberland County
My Commission Expires Aug. 22, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Debbie Daniels
816 11th ave.
Prospect Park Pa. 19076
610-715-1678
mirrors3@verizon.net


To Whom It May Concern,

My Grandson Is Nicholas Daniels, a senior and will be graduating from Valley Forge In May.
In January of 2018, we decided not to have Nicholas return to Valley Forge, due to the lack of
Leadership and Discipline, and the fact that there was nothing positive there to have Nick
return.
After experiencing and seeing many things by stopping at Valley Forge to visit Nicholas, I was
amazed as to what I heard, and witnessed, and this was between the hours of 7p.m and 9p.m
when they all should have been in study hall, to find out that their study halls never took place
nor did a lot of other things that Valley Forge Promised and sold us at orientation. So there was
NO Military structure No discipline, No Leadership, Instead Nicholas had to tolerate with cadets
dealing with drugs, drinking, and fighting. And for this we paid a big price. Needless to say this
was not the Military Academy we thought we were sending Nicholas to .It seemed that the BOT
has not been paying much attention as to what has been going on at the Academy, Nor do they
really care it's all about the money, Our money.
It was not until we met MG Lord, and sat and spoke to him, and gave him our concerns as to
why we would not be sending Nicholas back to Valley Forge, after speaking with MG Lord. He
gave us the confidence that he was going to bring back to the Academy what it once was. After
hearing his love and passion for the academy and what it did for him, I believed him, and from
that point having Nick to return was now going to be a positive point in his life, and it was.
Without MG Lord there is no Valley Forge.
He looked at each cadet as individual, took the time to sit and talk with them he wanted to hear
their concerns and issues, He was bringing back leadership, witch is the cornerstone of VFMC.
I believe that if the parents and alumni, stick together and hold their ground they can bring
Valley Forge back, and only if the General agrees to return. After seeing how they treated the
parents and alumni at the meeting held at Mellon Hall I believe it's time to change the
members who sit on the BOT, if we wish to see the Academy succeed.
We totally support General Lord. # wesupportwalt #schoolontherise


Debbie Daniels

COMMONWEALTH OF PENNSYLVANA
NOTARIAL SEAL
JANET E HOWARTH
Notary Public
MEDIA BORO, DELAWARE COUNTY
My Commission Expires May 17, 2019

Personal Affidavit

RE:  MG Walt Lord and VFMAC Leadership

My name is Diane Daulerio. I currently have two sons at Valley Forge Military Academy and College. Michael is a cadet in the college and part of the ECP Program. He is also the Regimental S3 in the Corps of Cadets. Matthew is a cadet in the 11th grade at the Academy.

Matthew started at VFMA as a sophomore. To say there were problems within the school would be an understatement.  As the school year was quickly coming to an end, I knew I could not trust the school with my son for two more years. Enter, MG Lord.

While sitting in the Lobby of Shannon Hall after conferences in April, General Lord and his wife Grace were taking a walk around and noticed me there. They introduced themselves and asked how I was. What they thought was going to be a quick exchange turned into an hour discussion. And it didn't end there. The passion, desire for change and commitment to the school exuded from him. His plans and goals for the school were everything I had originally thought the school would be. Through open communication and full transparency of his ideas and thoughts, I entrusted VFMAC with my son, Matthew, and he returned in the August for another year.

They say what a difference a year makes. In this case, what a difference a few months made. The changes were obvious and positive on so many levels on the campus. I was so pleased with our decision to keep our son at VFMAC and to receive his High School diploma from this institution. In addition to the positive "vibe" on campus, Walt made it a point to know each cadet by name.

Fast forward to the present. I have seen how this school operates as a whole **without** the leadership of MG Lord. And I have no intention on bringing Matthew back for his senior year should MG Lord not be reinstated. MG Lord is the reason for my check to VFMAC. Knowing the BOT does not put our cadets' education and future as their first priority is frightening and leaves us with no confidence. It saddens me to think I have to move my son for his senior year, but even he does not want to attend if MG Lord is not there.

*Diane Daulerio*  3/24/2019

Diane Daulerio

1023 Linden Avenue

Chester Springs, PA 19425

Mdaulerio1@comcast.net

*Swati Agarwal*

Commonwealth of Pennsylvania - Notary Seal
SWATI AGARWAL - Notary Public
Chester County
My Commission Expires Feb 6, 2023
Commission Number 1345916

7322305826                                         01:54:50 p.m.    03-25-2019        1 /2

Mrs.  Mary Dillard
421 Hutchinson Street
Hamilton, NJ 08610
(609) 743-8393 Cellular
Dillards421@gmail.com or mjenkins4@bloomberg.net

----------------------------------------------------------------------------------

My name is Mary Dillard I am a African American mother who have been an employee for 18 years at Bloomberg, LLP.  in Manhatten, New York.  Michael Bloomberg was a Eagle Scout.  As a employee, I have the ability to recommend "Valley Forge" on the employee philanthropist list.  Michael Bloomberg is a strong believer of "giving back organizations" as he is a a philanthropists.  I have two (2) boys ages twelve (12) Jordan and James age (15).  I am writing on behalf of my son James Devin Dillard, III.  James is a Sergeant in the 9th grade.

I am writing regarding my disappointment of the BOT. I am sending this affidavit for my family as well as the families of MANY who are very unhappy with the BOT actions; BOT communication efforts with the parents/cadets.  I am writing expressing my disappointment of the removal of MG Lord. I am completing this affidavit requesting the return of MG Lord.

I strive to give my sons the education they deserve they are active on open weekends attending Kappa Knights; we are members of Jack and Jill I am also a member of the Urban League and National Congress of Black Women.  I was considering sending my youngest son Jordan to Valley Forge for his 7th-12th experience Derrick Frazier and I discussed this several times and can attest to my enrollment options.   Upon learning the dismay of MG. Lord I have reconsidered my decision.  MG Lord changed the dynamic of the school.  Mr. Lord connected with the parents and the students.  Mr. Lord worked with all cadets spiritually, socially, emotionally. The diversity at Valley Forge made a great fit for James.  My sons never attended public schools. James graduating class consisted of twenty classmates within a Christian environment prayer; academics; hard work; good behavior was expected on all students upon graduation.  James behavior was never an issue. WM Lord spoke too him as a adult; treated him with respect. He adored the level of respect which was given to him by MG Lord.

*Mary Dillard*
*Page 2*

---

*Valley Forge met the same values as his prior middle school.  When we visited the school a plaque caught my eye "**Welcome to Valley Forge Where the finest Young Men attend the Finest Military Academy and Junior College in the United States" Class of 1986".***

*The plaque represented the loyalty within the graduates. The brotherhood; the giving back too the Institution and the core values it stood for.  Fellow alumni (Walker Palmer) referred us to Valley Forge who is now an attorney. During James first six (6) weeks he was promoted to Sergeant; James learned leadership skills; James learned to manage his time away from home; James learned discipline.  I am a testimony that my son would not have made the changes he made without the direction of MG Lord.  MG Lord has spoken to me on several occasions regarding James' improvement.  The personal approach he had on cadets on the campus kept them motivated; encouraged; eager to be at school eager to be at Valley Forge. His motto #School on the Rise still stands. His Wednesdays with Walt showed progress every week not every quarter; not ever semester.  James and many of his classmates are slowly losing faith in there school.  My confidence of the members of VFMC Board of Trustees (BOT) future for the Academy is questionable.  Twenty-five boys left on a closed weekend so they would not have too participated in the parade.  The TAC officer advised his dismay because of the lack of structure of the academy.  The financial hardship of boarding school with the added stress of BOT decisions?*

*Myself along with the many other parents of this Academy/College requesting that you reinstate  MG Lord.  The BOT actions removing him are very unsettling. As I search for high schools for my soon to be 7th and 10th graders if a decision is not made promptly.  It heart breaking too know what could have been for my boys future.  I would like to end on this statement Class of 1986 "**Welcome to Valley Forge Where the finest Young Men attend the Finest Military Academy and Junior College in the United States" Class of 1986".**  Thank you for your time.*

*Sincerely,*

*Mary Dillard*

Mary Dillard

STATE OF NJ
COUNTY OF MERCER
ACKNOWLEDGED BEFORE ME ON 9/25/17

RONALD J HORNAK
Notary Public
State of New Jersey
My Commission Expires June 23, 2023
I.D.# 2214918

**Personal Affidavit**

**RE: Leadership of MG Walt Lord**

My cadet's name is Joseph Thomas Diorio. Cadet Diorio is 18 years old and is a freshman at Valley Forge Military College (VFMC).

My son's residence is 805 Edgeworth Court, Red Lion, PA 17356.

MG Lord embodies the cornerstones of VFMC: academic excellence, character development, personal motivation, physical development, and leadership. As the mother of a cadet, I have witnessed the transformation of my son from a reliant boy searching for a purpose to an independent person who is preparing for a future. During the first semester, I expressed 2 main concerns with the education and atmosphere at VFMC. I emailed MG Lord directly, as I had been instructed to do. MG Lord immediately responded to my communications with a plan to support my cadet. Alumni, staff, and fellow cadets were mobilized and committed to the success of my son because of my direct communication with MG Lord. In 8 weeks, with the unwavering dedication and support from VFMC brothers, Cadet Diorio's grades have improved, he has attained leadership status, established personal and professional goals, and has engaged in activities that support VFMC. There are many individual people who I can express my appreciation to; however, my gratitude belongs to the collectivism of the VFMC corps led by MG Lord. The alumni and cadets are dedicated to VFMC and the leadership of MG Lord, which has sparked a renaissance of corps values on campus. This devotion to developing men of purpose, perpetuated by MG Lord, is apparent in the changes I have witnessed in my cadet. Should my son and his cadet brothers become alumni of VFMC, they will be on a trajectory for success that leaders like MG Lord embody through servant leadership.

If MG Lord is not reinstated, I will not be sending my son to VFMC for his second year. I have no confidence that any members on the VFMC Board of Trustees (BOT) had the cadets' best interest in mind when MG Lord was dismissed. My convictions pertaining to the BOT was further strengthened when I witnessed their revisionist history of events portray MG Lord as one who is not dedicated to VFMC. My cadet, nor my financial resources, will support an institution which promotes character assassination and engages in questionable fiduciary practices.

Katharine S. Diorio

805 Edgeworth Court

Red Lion, PA 17356

717-586-5819

Katiediorio@hotmail.com

Dioriok@rlasd.net

Sworn to and Subscribed before me,
This 22nd day of March , 2019 .

Signature of Notary

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LINDA WILKERSON, Notary Public
Windsor Twp., York County
My Commission Expires August 26, 2020

3/21/2019

AOL Mail - Message View

**Me**

**From:** Craig Farmer <craigdowntown@gmail.com>
**To:** Craig <dtsrip2@aol.cpm>
**Date:** Thu, Mar 21, 2019 12:35 pm

AFFIDAVIT
Dated Thursday March 21, 2019

My name is Craig Farmer. I reside in the state of Pennsylvania.
I am a parent of a first year junior year cadet, Darren Farmer. He is 16 years old.
We decided collectively as a family to enroll our son at Valley Forge Military Academy because of our belief in the Valley Forge "product" presented to us by General Walter
Lord and his vision for the institution.
Since his enrollment, this product had been substantially altered by the actions of the Board of Trustees.
This alteration has forced General Lord to turn in his resignation.
As a result, I have decided not to re-enroll my son to VFMAC next year unless the conditions made and presented to the BOT for General Lord's reinstatement have been met.
I will be withholding any tuition, deposits for such, and course selection until this time of reinstatement.

Respectfully,
Craig Farmer
19 Congress Court
Quakertown, Pa 18951
267-221-7570

Commonwealth of Pennsylvania - Notary Seal
KAREN V CAPPUCCIO - Notary Public
Bucks County
My Commission Expires Nov 20, 2022
Commission Number 1341977

## Affidavit of Elana Yaron Fishbein

**STATE OF PENSYLVANIA**

**COUNTY OF MONTGOMERY**

The undersigned, Elana Yaron Fishbein, being duly sworn, hereby deposes and says:

1.      I am over the age of 18 and I am a resident of the State of Pennsylvania. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2.      I suffer no legal disabilities and have personal knowledge of the facts set forth.

3.      I am the parent of Zane Fishbein, a cadet at Valley Forge Military Academy (VFMA) for his senior year of high school.

4.      On 8 March 2018, Valley Forge Military Academy and College (VFMAC) selected Major General Walter Lord to be its new President.

5.      On or about 16 April 2018 Zane Fishbein was informed that he had been selected for admission to VFMA with a Salute to Veteran's Grant Scholarship.

6.      The total family cost for Zane to attend VFMA was $22,875 payable in full before the academic year commenced.

7.      Zane entered the Academy in August, 2018 as a plebe.

1

8.      Zane was promoted to the status of cadet 22 September 2019.

9.      On March 7th 2019, Major General Walter Lord, tended his resignation as President to the VFMAC Board Chairman John English, citing a "philosophical disagreement" with the Chairman.

10.     On 9th March 2019, the Chairman issued a statement on behalf of the Board of Trustees stating "The board regretfully accepted his resignation and has committed to working with him to achieve an orderly transition, with both parties acting on what's best for the institution we both love, honor, and respect...."

11.     Major General Lord becomes the third President to leave the post in four years.

12.     VFMAC is a 91-year-old school working to recover from a troubled decade during which enrollment declined and officials struggled with dwindling finances, layoffs, and allegations of hazing and sexual assault by students.

13.     On 10 March 2019, Major General Lord was immediately relieved of his duties.

14.     On or about 10 March 2019 Major General Jessica Wright, the Board Vice Chair, and Roque Schipilliti, the Alumni Association Representative to the Board of Trustees, resigned from the Board.

15.     In her resignation letter, Major General Wright brought to light the issues for the President's departure, which included the Board's apathetic attitude, lack of governance, and intense micromanagement of the President.

2

16.    During the week following the President's departure, both the parents of the enrolled cadets and the alumni expressed overwhelming support for Major General Lord and job he has done to create a supportive family atmosphere at VFMAC. Major General Wright stated that Lord's Presidency was "highlighted by great decisions and successes, as well as representation of the school with exceptional bearing, decorum, professionalism and honor."

17.    On 16 March 2019 a VFMAC Alumni Meeting was held. Eight Board of Trustees (BOT) members were in attendance. Over one hundred parents and alumni attended to voice support for Major General Lord and press for his reinstatement. BOT Members in attendance all expressed their positive impression of Lord's performance in the role of President. A statement by General Lord was read at the meeting and it expressed his willingness to return to the Presidency of VFMAC under the condition that the Chairman step down. Owing to the overwhelming support for the Major General from both Alumni and parents, the BOT members promised to call an emergency meeting to discuss the issue.

18.    An informal polling of parents indicate that at least 75 would withdraw their students from VFMAC if President Lord does not resume his duties as President of VFMAC.

19.    VFMA had an enrollment of 201 students as of the 2017-18 school year, which has fallen 40% since 2013.

In conclusion, I contend that Major General Lord was set up to fail by the Board Chairman and that the Board Chairman has created conditions at VFMAC that will surely lead to its closure. The school's precarious financial situation (it has operated in the red for at least 15 years) is indicative of poor leadership at the Board level, irresponsible management, an absence of

transparency with the VFMAC community, and a total lack of accountability to anyone. **Conditions have been created that did not exist at the beginning of the school year and I would certainly not have paid $22,875 in tuition and placed the responsibility of my child's education in the hands of a Board of Trustees that has acted irresponsibly. They have garnered my trust under false pretenses.** The recently released <u>Comprehensive Assessment for Valley Forge Military Academy and College</u>, commissioned by the Healey Educational Foundation, supports my contention that the VFMAC Board of Trustees has not acted in good faith, made management decisions that demonstrate irresponsible custodial oversight, and fail to practice fiduciary responsibility.

**By undermining President Lord, the Board of Trustees has undermined the environment at VFMAC and creating conditions that are detrimental to my son's education and ability to graduation from a school that will have a lasting legacy.**

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this 31 day of MaRch 2019.

*Elana Yaron Fishbein*

## NOTARY ACKNOWLEDGEMENT

**STATE OF PENNSYLVANIA, COUNTY OF MONTGOMERY, ss:**

Notary Public _____

Title and (Rank) Branch Manager

My commission expires May 16, 2022

Commonwealth of Pennsylvania - Notary Seal
Katharine R. Drumm, Notary Public
Montgomery County
My commission expires May 16, 2022
Commission number 1332615
Member, Pennsylvania Association of Notaries

4

3-21-19

Re: VFMAC BOT and dismissal of MG Walter Lord

My son, Cadet Conrad Walter Franke is currently attending the college under the ECP program. Connor had several options for his college education, including scholarships from Central Michigan University and The Citadel. Graduating high school from Marine Military Academy which has an amazing JROTC program, he wanted to continue his education in the military model. After thoroughly researching both The Citadel and VFMAC, and meeting with MG Lord the previous summer, Connor decided that the education and ECP program offered through "The Forge" would be the perfect fit for him.

Since he started at VFMAC Connor has been thoroughly disappointed with the lack of respect for military leadership among non-ECP college students. While MG Lord was giving the student body a "state of the school" address to the student body, three "student" athletes were breaking into his room, stealing money and credit card information. Connor had to go to court on several occasions to resolve this matter. MG Lord completely backed our son and roommate while the football coach could not believe that our son was putting his athletes through this. MG Lord had my sons back and I thank him for that.

There have been other ups and downs in my sons first year at VFMAC, however he has repeatedly said that under MG Lords leadership measurable progress was being made. I explained to my son that it's easier to turn around a car doing ten miles an hour as opposed to an eighteen wheeler doing 70 on the highway and it will take time for MG Lord to right the ship. Now with his resignation and refusal of the BOT to set aside pride and do the right thing for the future of the school, I am worried for my son and his future. The non-military direction the BOT is taking, along with supporting Mr. John English as president of the BOT, will result in alienating current and future academy and college students. Logically, this declining enrollment will result in fewer students, and most importantly loss of revenue and ultimately closure of the academy and college. I now believe that one or more members of the BOT have a vested interest in the closing of the school, whether through real estate development, old axes to grind, or personal vendettas. This is at the cost of my child's future.

If the school closes prior to my son's graduation from the ECP program and VFMAC, then he will be in violation of his contract with the United States Army and unsure of his future direction. He will have lost years that he will never be able to recapture. Under MG Lords guidance and leadership, real and sustainable changes were being instituted. Please do not stop that momentum.

Respectfully,

Walter M. Franke, D.D.S.

MATTHEW DUNCAN
Notary Public - State of Michigan
County of Grand Traverse
My Commission Expires
Acting in the County of

March 21, 2019

SBFC&T, P.C.
Atten: Leno P. Thomas, Esq.
317 Swede Street
Norristown PA, 19401

Dear Mr. Thomas,

This letter is written with the intent of reinstating MG Walt Lord as president of Valley Forge Military Academy and College (VFMAC). My son E.V. is a 14 year old student in the eighth grade at VFMAC.

One of the major deciding factors for my son to attend VFMAC was the leadership and vision demonstrated by MG Lord. His commitment to the school and the students was clear and unwavering. Throughout this year, he has shown that his actions back up all of his talk. He has been present for the students, energized (and recruited new) staff, re-engaged the alumni and shown true care and concern for the welfare of the cadets.

Personally, he has served as a strong role model for my son, showing up for him in the ways that my son needed to grow. I consistently shared that through MG Lord's strong leadership, underpinned by compassion, *he was changing lives and the trajectory of the cadets*. For this, I am forever grateful and even spoke with my family's foundation about making a grant to the school. We have mobilized the money, however I will not make this grant unless MG Lord is reinstated.

My son has been through several changes and I was thrilled that he finally found a home at VFMAC. However, I fear that MG Lord's forced departure will disrupt the foundation that he built. For this reason, we most likely will not return to VFMAC next year if MG Lord is not reinstated. Further, given the behavior of the Board of Trustees – especially with the unprofessional and unethical letter released today attacking MG Lord with false history – I would not trust that my son would receive an education based on honest and ethical behavior under the board's current leadership. Accordingly, I will not submit my deposit or any further funds to the school until MG Lord is reinstated.

Many Thanks,

Naomi Freeman
221 Regester Ave
Baltimore, MD 21212

JASON L NEMOY
COMMISSION EXPIRES
AUG
2
2019
BALTIMORE COUNTY, MD.
NOTARY PUBLIC

X   Jason Nemoy

March 21, 2019

March 21, 2019

Parent: Kimberly Graham
Cadet: Malcolm A. Graham, grade 9, Band
46 Cheney Ave.
Peterborough NH
03458

To Whom It May Concern:

I am writing to express my disappointment with the current situation at Valley Forge Military Academy.

My son was accepted into VFMAC on March 6th, 2018 and we decided to move forward with his education at this school even though we had some reservations, specifically regarding the high turnover rate of past presidents. With the announcement of Major General Lord taking over as President on March 8, 2018, we were assured that this new leader had the passion and vision to move VFMAC into a position of a leading military based high school.

The positive change in our son since the fall is a direct reflection on the good work that MG Lord has done in such a short time. Our son also has stated he has seen positive changes in the school on many levels since the beginning of the school year.

To continue to have our son enrolled in this school without MG Lord as president and with a Board of Trustees who we feel are not working for the betterment of the school or the cadets, would be irresponsible as parents.

To this date, we have not paid our deposits for next year and our son has not chosen his courses for next year. We will not be continuing at VFMAC in the fall of 2019 without the correct leader of the school in place. And that leader is MG Lord.

Respectfully submitted,

*Kimberly Graham*
Kimberly Graham

County of Hillsborough , ss.
State of New Hampshire
On this 21st day of March 2019
Kimberly A. Graham ,
known to me or proven to be the instrument subscriber, personally appeared before me and acknowledged that he/she executed the foregoing instrument.
Linda M Guyette , Notary Public

LINDA M. GUYETTE, Notary Public
My Commission Expires June 4, 2019

Amy Howe
2685 Anqua Court
Sparks, NV 89434
(775) 287-4950
amy.howe@sbcglobal.net

SBFC&T, P.C.
ATTN: Leno P. Thomas, Esq.
317 Swede Street
Norristown, PA 19401

March 23, 2019

Personal Affidavit of Amy Howe

RE: Leadership of Major General Walt Lord at Valley Forge Military Academy and College (VFMAC)

To Whom It May Concern:

My son is Nicholas Howe. He is currently a 19 year old college freshman at VFMAC. Nicholas chose to attend VFMAC as a "self-prepster" for the US Air Force Academy after not receiving an appointment after his senior year of high school. To give a little background about Nico and his circumstances, he had a 4.5 GPA, a 34 ACT score, and a 1470 SAT score as well as three congressional nominations to the USAFA when he sadly did not receive an appointment out of high school. He had presidential scholarships to both the University of Nevada, Reno and to the Colorado School of Mines as his "Plan B". After the devastation of not getting in to the USAFA, he strengthened his resolve to pursue his dream and began looking into military schools to prep and up his chances to reapply – deciding to forgo his scholarships to these other prestigious schools. We learned that his academics and CFA scores were too high for him to be considered to be a sponsored prepster, so he would have to go it alone. We spoke to representatives at MMI, NMMI, and VFMAC. We were heavily cautioned against VFMAC by the other military schools due to their reputation for being "run by civilians", having no buy in to the military culture, and having fallen out of favor by the service academies. However, Nico made a strong connection with the baseball coach at VFMAC, was enamored with the history of the school, and decided he would give it a shot. One week before it was time to report to VFMAC, Coach Davis accepted a position at College of the Sciences and Nico was again devastated. On top of all of this, the one thing we kept hearing over and over was that "VFMAC doesn't get cadets like Nicholas". His one connection at a school he had never even set foot on was going to be gone. Enter MG Walt Lord.

My husband and Nico went to VFMAC for orientation and went straight the MG Lord to express their concerns about his situation, lack of a baseball coach, the reputation of the school, and Nico's goals. MG Lord's vision and passion for the school was evident and he put their fears to

rest. I will be perfectly honest – Nico has had several experiences at VFMAC that have been systemic failures of epic proportions. We cannot get people who have worked at this institution for many years to respond to an email, the baseball coach has STILL not been replaced (since August) and Nico had to appeal a grade he was given due to the teacher not following her own syllabus, and was denied the appeal by a dean who resigned immediately after his denial and who I have since heard has had multiple ethics violations against him. This grade may very well cost him a USAFA appointment this year. (Incidentally, he again has two Congressional nominations and we are waiting to hear.) Throughout all of this turmoil, we have had to go above people's heads to MG Lord who responds immediately, gets us answers and responses from others, helps to resolve issues, and goes above and beyond to help Nico on his journey. He has made a connection with Nico throughout his leadership journey on the military side and gotten to know him enough to write him an exceptional letter of recommendation for the USAFA. MG Lord was making strides to lead the faculty and staff to begin to see the cadets at the academy and college as more than the "low achievers" that I believe they all see them as – as that is how they viewed Nico and treated him as such even though that was far from the truth. It was clear from the very beginning that VFMAC has a culture problem – and MG Walt Lord was definitely the man to fix it. He was beginning to make strides but it was painfully obvious that he was hitting road blocks at every turn. It is my personal belief that the BOT has no interest in changing the current culture of the school and that is gravely concerning.

If we had known half of what we know now, I'm not sure we would have sent Nico to VFMAC. The one thing we are all grateful for is meeting and the connection he has made with General Lord and his fellow cadets. The deception and rot within the BOT that I have witnessed from across the country is appalling. I cannot understand how anyone would want to continue in their position knowing the strife they are causing families and children unless it is somehow for their own personal gain. As an educator and as a human being, I am disgusted.

If Nico does not receive an appointment to the USAFA, he is looking at other options for next year as long as MG Lord is not at VFMAC next year. There is no way we would even consider spending money on a school as corrupt as Valley Forge if that does not change.

State of Nevada
County of Washoe

This instrument was acknowledged before me on
3-23-19 by Amy kathleen Howe.

Amy Howe



NOTARY PUBLIC
STATE OF NEVADA
County of Washoe
MARISOL TORRES
No. 19-1363-1
My Appointment Expires February 5, 2023

# AFFIDAVIT

March 21, 2019

From the desk of:

Mrs.Margaret Howlett

1710 New York Ave Apt 4D

North Wildwood, NJ 08260

Att:    Leno Thomas Esq.

317 Swede St.

Norristown, PA 19401

I, Margaret Howlett, am the parent of a first year cadet who is a freshman at Valley Forge Military Academy and College in Wayne, PA. My son,  Sgt.Tyler Shepherd, lives in Hocker Hall. He has a Gold Star for Academic Excellence, is a platoon leader, is an active member of the Color Guard, is a Commando and is a member of the VFMAC Rifle Club.

I intend to re-enroll my son Tyler Shepherd in VFMAC for his 2nd year of high school in the fall of 2019.

However, our plan to re-enroll is contingent only upon the VFMAC Board of Trustees agreeing to the requests and expectations that General Major Walt Lord is reinstated as President of VFMAC.

Respectfully,

*Margaret Howlett*

Margaret Howlett

609-972-3464

Sworn and Subscribed before me this
21st Day of March 2019

*Patricia B Mabry*

PATRICIA B. MABRY
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 10-2-2019

Major General Lord has made a huge impact on my son's life, education and ability to make goals

and decisions regarding his goal to enter West Point. My son met with him on several occasions to unofficially discuss some challenges he was experiencing. My son reported that  Lord provided him with sound advice and made him feel part of a team. He is the breath of fresh air that VFMAC needs. Walt is a great leader based on his ability to inspire and motivate cadets and parents. He also works as a team together with the parents, who are paying tuition. He involves not only parents, but alumni, in VFMAC events. His vision to create a family, gives cadets a sense of belonging, accountability, and responsibility. Our cadets admire him for engaging with all family members and for being available at all times. He does not have ulterior or secret motives that would cause him personal gain, financially or increase his credentials. And lastly, I entrusted Lord and his wife Grace with the one thing that is most precious to me: my son.

Thank you Margie

3/20/19

To Whom It May Concern:

We are the parents of two Valley Forge Military Academy (VFMA) Sophomores, and we are residents of the State of Pennsylvania. We enrolled our Cadets, T. Michael Hall and C. Maxwell Hall in this institution because we wanted to instill a sense of Respect, Duty, Honor, and Self Reliance in our boys. Walter Lord represents all these Characteristics, and we fully share his vision for the school going forward. He made amazing changes in the school in a very short time.

We are very disheartened that Walter Lord and his vision of how the school should be brought back to its Military History have been discarded. He and his wife have been a huge asset to VFMA and we can't afford to lose their leadership.

If Walter Lord is still at VFMA as President we fully expect to enroll both our Cadets for the coming school year. However, if Walter Lord does not return our Cadets will not be returning for another year that this institution.

Thank you.

Rebecca A. Hall and T. Max Hall III

Parents

Sworn to before me this
20th day of March, 2019.

Nedeen Collins, NOTARY PUBLIC
NEDEEN L COLLINS
COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
NEDEEN L COLLINS
Notary Public
CITY OF WILLIAMSPORT, LYCOMING COUNTY
My Commission Expires May 10, 2020

March 24, 2019

TO: mercedes@norristownlawyers.com ATTEN:VFMAC

RE: Student: David Kapustein, Age 16, 9th Grade

My son is a 9th grade cadet at St John's Military School (SJMS). The school announced in Feb they would be closing and invited a dozen plus schools to Parents Weekend to help cadets and parents find options for next year. My son and I spent 3+ hours meeting representatives from most of the schools. We had the great pleasure to meet MG Walt Lord representing Valley Forge.

MG Lord was polite, courteous, sympathetic with our plight, informative and forthright about not only his efforts and vision for VFMAC but also its difficulties in recent times and military schools in general. He shared information about the school – not all of it positive. About the past 10+ years (and 2-3 presidents), a $1.7million budget deficit when he started last April and now balanced, how alumni had been reluctant to participate and contribute due to VFMAC's efforts to step away from its military traditions and how that'd been changing (in no small part due to his efforts), his actions to date and going forward to reinstitute those traditions and how positively they'd been received by parents and alumni. As one example of MG Lord's character, a parent asked him point blank why we shouldn't expect VFMAC to close in the next 3 years. MG Lord wasn't surprised or defensive. Quite the opposite, he empathized and proceeded to share information about the school's fiscal turnaround and available resources, and while nothing is certain, why we shouldn't be worried.

I had the great fortune to be able to spend 45min with MG Lord, at first with other parents and cadets and the latter half on a 1-1 basis. We discussed VFMAC, the military school industry, the military, local events and other topics. I cannot state strongly enough: MG Lord is the single greatest recruiting tool I've ever seen, for any purpose, for any org (and I've seen Steve Jobs). Most importantly, his goals for VFMAC were dead on exactly what my son's looking for.

David has long been interested in the military. Last Xmas break when talking with a family friend and mentioned he was at military school, she asked how he liked it. His response: "It's what I've wanted for 10 years". He's always been bright, likes physical activity and has the strongest developed sense of right and wrong of anyone I've ever known. He likes and, frankly, needs, the structure the military provides. He's long been interested in the Army and his goals have only refined as he's grown. His target: apply to Delta Force in 15 years, and to do so he desires a good military school, then college to become a commissioned officer, West Point, Army Rangers and ultimately Delta Force. He understands these are high goals, but he also recognizes one should aim high. I don't know if he'll achieve all he's aiming for. But he's capable and he's deeply motivated. Men have accomplished more with less.

I don't share this to brag. I merely state facts, so you can understand why we agreed most strongly with MG Lord's vision for what VFMAC can and should be. A military school with a strong and vigorous military culture? A school he could continue for college? One of the 4 academy prep schools recruited by West Point? A military school with a long and respected history, growing participation and a stable and growing financial base? We couldn't hope for more. We did more research, shared information with other parents and everything confirmed VFMAC was the one. MG Lord has been instrumental in helping make VFMAC be the school we (and others) have been seeking. We heartily recommended VFMAC to other cadets and parents looking for options after SJMS.

And then MG Lord resigned. I saw the Board of Trustee (BOT) response accepting the resignation. The sudden outcry and concern amongst other parents and alumni. The questioning what Lord meant regarding

## All Purpose Acknowledgement

State of _Washington_
County of _King_

On _3/25/2019_, before me, _FANNIE SIU_
(date)                          (notary)

personally appeared, _HOWARD KAPUSTEIN_
(signers)

☐ personally known to me -- OR -- ☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

> Notary Public
> State of Washington
> FANNIE SIU
> MY COMMISSION EXPIRES
> 09/23/2021

(seal)

WITNESS my hand and official seal

_____
(notary signature)

## OPTIONAL INFORMATION

The information below is not required by law. However, it could prevent fraudulent attachment of this acknowledgement to an unauthorized document.

CAPACITY CLAIMED BY SIGNER (PRINCIPAL)

☐ Individual
☐ Corporation Officer
_____
title(s)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Guardian/Conservator
☐ Other: _____

SIGNER IS REPRESENTING:
Name of Person(s) OR Entity(ies)

DESCRIPTION OF ATTACHED DOCUMENT

_Affidavit_
Title or Type of Document

_1_
Number of Pages

_3/24/2019_
Date of Document

_____
Other

Right Thumbprint
of Signer
(if required)

"Irreconcilable differences". I participated in the following Sunday conference call, during which the BOT posted a note accepting Lord's resignation "effective immediately".

And I started to learn a lot more about the current state of VFMAC. How over the past 10+ years it has lost much of its military traditions and culture. I read the BOT's Bylaws and was shocked at their insular nature with no reporting let alone accountability to parents, alumni or anyone save themselves. I saw the following Saturday's video stream of the hours long meeting at VFMAC with BOT members. I heard one BOT member answer a question stating he was a lawyer and wouldn't discuss confidential information, and then another BOT member proceeded to discuss MG Lord's interview 'test' results in detail (I don't know if that violated any laws, but it does seem to violate HR practices and was definitely not professional). I learned about the report submitted to VFMAC (Assessment Draftv3.12.16.18) providing critical analysis and advice. I've heard of questionable financial and leadership activities (one can only wonder what a forensic accountant would unearth). I've heard the BOT's plans to *reduce* VFMAC's military culture.

In short, I've learned and seen much these past weeks regarding VFMAC's actual state of affairs, including the BOT and MG Lord. Most of it troubling.

I stopped recommending VFMAC to other SJMS parents. I cannot in good conscience recommend the school, to anyone. Not without MG Lord. I know 3 other SJMS parents considered VFMAC in their top choices. Before recent events. And now... All are equally concerned and looking elsewhere, including one who like us had (happily) decided VFMAC was their future.

**VFMAC, under MG Walt Lord's guidance, is exactly what my son is looking for.**

VFMAC, without that strong military culture and rigor **as described and intended by MG Lord**, is not.

I make no bones about it. If VFMAC cannot or will not offer the strong military education and culture David is looking for he will be attending another military school. VFMAC as MG Lord intended is a very strong option for David. VFMAC, as currently operating, is not.

Let me repeat. VFMAC, as currently operating, is NOT what David needs or desires.

VFMAC as currently operating utterly fails to meet David's needs. He will NOT attend the school as-is.

***IF*** MG Walt Lord is reinstated as president **AND given the authority** to make the changes necessary for VFMAC to become the institution he's described and intended then, yes, VFMAC is the(!) strongly compelling choice for David. We will happily pay the sizable tuition and gladly (resume) recommending VFMAC to other parents looking for a military school.


Sincerely,

Howard Kapustein

2625 22nd Ave NE, Issaquah, WA 98029

Email: howardk@microsoft.com

Cell: (770) 827-4994

Notary Public
State of Washington
FANNIE SIU
MY COMMISSION EXPIRES
09/23/2021

Fannie Siu 3/25/2019
see attached acknowledgment

# Acknowledgment by Individual

**WELLS FARGO**

State of Florida

County of _Hillsborough_

The foregoing instrument was acknowledged before me this _22_ day
of _MARCH_, 20 _19_, by _SHANNON Koebbe_ (name
of person acknowledging).

☐ Personally known to me
☒ Produced Identification
Type of Identification Produced _FL DL_

Notary signature _____

Notary name (typed or printed) _ABID AFRIDI_

Title (e.g., Notary Public) _NOTARY PUBLIC_

Place Seal Here

Abid Afridi
State of Florida
My Commission Expires 09/12/2021
Commission No. GG 140019

**For Bank Purposes Only**

**Description of Attached Document**

Type or Title of Document
_AFFIDAVIT_

Document Date
_3/22/2019_

Number of Pages
_03_

Signer(s) Other Than Named Above
_N/A_

F001-000DSG5350FL

© 2017 Wells Fargo Bank, N.A.
All rights reserved.

DSG5350FL (Rev 01 - 05/17)

Shannon Koebbe
4940 W. San Rafael St.
Tampa, FL  33629

March 21, 2019

To Whom It May Concern,

My name is Shannon Koebbe and my son, Cadet Christopher James Koebbe, Jr., is an 18 year old twelfth grader, (senior class of 2019) attending Valley Forge Military Academy. He started VFMA at the beginning of his 11th grade year as he was struggling with his ADD and having trouble focusing on his schoolwork in his current College Preparatory school, Jesuit High School Tampa in Florida.

We needed a drastic change in our son's life, and were advised by the psychiatrist he was seeing, that removing him from his current environment and sending him to a military school setting was the only solution to him having the best chance to

---

↩ Reply all | ∨     🗑 Delete     Junk | ∨     •••                                    ✕

Academy stood out in my head since I grew up in the Philadelphia area and my parents still live in King Of Prussia, only 6 miles from VFMAC campus. It always had an outstanding reputation- and that is what we wanted for our son. James' father, my husband, was a Lt. Colonel in the US Air Force. He was deployed to Afghanistan when James was only in 5th grade. Our son is somewhat used to the military model and has been part of a military tradition his whole life. James' grandfathers were also military- one serving in the US Air Force and one serving in the US Army. The military tradition runs deep in our family.

We began the process of enrolling at VFMA after visiting the campus and being somewhat recruited by the previous football coaches and Mr. D'Andrea. Our son was skeptical about everything and was not happy with our decision to send him to VFMA. It was one of the most difficult decisions I had to make in my life. I left my oldest son in August of 2017 for football camp and didn't look back. He knew no one and had no idea what he was going to endure over the next few months. For all of us, it was a life changing experience. However, our son was the first to complete his plebe training and earn his capshield that year. It was extremely emotional and we were very proud of all that he had overcome. He was thriving

academically- more than he had in his past two years of high school, he was competing on the Academy football team as both offensive and defensive linesman, and was learning new things about how to be an independent young man. The changes in him were very apparent. He was well adjusted, following rules, attentive to uniform detail, kept a clean room, and was accountable for himself and those around him. I was very proud of what he was learning and how he was conducting himself.

There were also some very disturbing things that went on around campus. I started making a list when my son would call and tell me about the declining physical state of the barracks, the unclean kitchen and low cafeteria standards, the fighting that occurred in the barracks, and the antics that cadets got away with during class time. I lived in Florida and knew no other students or parents so I had no way to discuss my concerns with anyone and I honestly didn't want to believe a lot of it were true. I felt very alone as a parent and very worried about my decision to send my son away. I felt scared for his safety at times and had to call and ask administration to check on him. However, we still felt the good effects of the military model outweighed the negative findings for the time being and we were willing to send him back to for senior year.

Many of our negative feelings and experiences changed when MG Walt Lord took over at the end of last year. He was bringing the reputation of the school back to what it once was. We started getting connected to other parents and alumni as the social media Facebook page, FORGE FAMILIES was born. It was a way for all parents to connect and discuss concerns, happenings with the school, and begin relationships with other VF families. We felt connected. We felt like we belonged somewhere. We felt like we were part of our son's journey. MG Walt Lord gave updates from cadets, from the daily life on campus, and kept us informed about calendar events and special events that the cadets were doing. It is what we would have expected from the beginning, yet we never experienced until MG Lord arrived.

MG Lord had the pulse of the campus- he was involved. He cared about the cadets and it showed. He knew what was going on and he was honest with the parents in telling us what was happening. Parents were asked to take part in in a question and answer session in September 2018 with a company that was willing to listen to our concerns and present them back to VFMAC. We as parents felt that there was finally some change coming to the campus. Someone was finally

listening to us and willing to change what is wrong. Parents (including me) did not hold back in our open discussion about what was currently wrong with the Forge.

For the entire 10 months that MG Lord has been a part of VFMAC as president, I have nothing but positive things to say. He has done many things to help communication between parents and the administration. He has kept parents up to date with the state of the Forge and has been transparent and welcoming to all parents and cadets in my opinion. He understood that there were difficulties and challenges to overcome,, but was making steps to correct them each case by case and step by step. He had truly created a "school on the rise."

Without the reinstatement of MG Lord, the state of VFMAC is in dire trouble. He is the one who is looking forward to keeping the spirit of the military model alive. We have no doubt that there will be a significant decline in the school's enrollment without his leadership. Although we have a current senior in the Academy, we would not be returning next year if MG Lord was reinstated as President. He IS the future of the school. He is the one that we have been waiting for to lead us into the next decade. Without MG Lord, our school will crumble. Please take action and reinstate MG Walt Lord. It is for the good of every family involved with Valley Forge Military Academy.

Sincerely,
Shannon Koebbe
koebbes@yahoo.com
484-919-5884

*Shannon Koebbe*

March 22, 2019

To Whom It May Concern,

This letter is to notify you, that if the necessary changes are not made to the VFMAC's Board of Trustees, which will enable the reinstatement of Major General Walter T. Lord as the President of Valley Forge Military Academy and College, my son, Dylan Campbell (who is 15 years old), will not be returning next year to VFMAC for his sophomore year.

General Lord's presence has made a significantly positive impact on my son during his brief time at Valley Forge and seemed to be determined to bring Valley Forge back to the school it once was and should be.

Thank you,

Beth V. Marotta
117 Mimosa Drive
Whitehouse Station, NJ 08889

DEBORAH L GERARD
Notary Public - State of New Jersey
My Commission Expires Apr 23, 2024

3/25/19

<u>DECLARATION OF MICHAEL D. and SUSAN K. MISCOE</u>

STATE OF PENNSYLVANIA   )

COUNTY OF SOMERSET      )

       Michael D. and Susan K. Miscoe, make the following declaration under oath regarding the following facts, which are within our personal knowledge.

1.  Our names are Michael D. Miscoe and Susan K. Miscoe. Our address is 1032 Peninsula Drive, Central City, PA 15926 and each of us are over the age of eighteen.

2.  We are the parents of Garrett M. Miscoe, who is fifteen years old and a ninth-grade student at Valley Forge Military Academy ("VFMA").

3.  We were sold on Valley Forge Military Academy because of its alleged focus, using a military model, on structure and discipline as a means of "developing boys into young men of character." After meeting MG Lord, and addressing concerns we had based on reviews from prior students/parents, we became convinced that he was the right individual to ensure that VFMA would deliver on its promise.

4.  Early into our son's attendance at VFMA and after completion of plebe training, our son was assaulted in the barracks, items of personal property were stolen, and his phone was broken purposefully by another cadet. The apparent lack of discipline based on these events was raised with the TAC team.  MG Lord took a personal interest and made the effort to address what was being done to correct these issues throughout the school.  MG Lord convinced us that he was hard at work to change the environment at VFMA and restore discipline so that the experience we were promised for our son was delivered.

5.  In subsequent meetings with MG Lord, we became further convinced that under his leadership, VFMA would continue to change for the better.

6.  Based on our interactions with MG Lord, it is our belief that MG Lord would not have resigned absent recognition that he would not be permitted to accomplish the task for which he was hired.

7.  The Board of Trustees has been less than transparent in its communications to parents regarding the issues between itself and MG Lord that precipitated MG Lord's decision to resign.

Declaration of Michael D. Miscoe and Susan K. Miscoe
Page 2 of 2

8. The Board of Trustees' apparent refusal to address the issues precipitating MG Lord's decision to resign has convinced us that there will be no real change at VFMA and that as a result, VFMA will not provide the promised structure and discipline as a means of "developing boys into young men of character."

9. Absent MG Lord's continued service as President of VFMA and a Board of Trustees willing to empower him to achieve his vision for VFMA, we have no confidence that VFMA will ever provide the environment and educational experience that was the singular condition precedent to our decision to enroll our son Garrett at VFMA.

10. Because of MG Lord's (effective) termination, we have no confidence that the level of discipline at VFMA will improve. The individuals currently sharing the duties as President have no doubt learned that they have no authority to cause meaningful change.

11. We are aware that many other parents of both existing students and at least one incoming student (who we personally know) have similar concerns and have either decided to withdraw their sons from VFMA, have not selected academic courses or paid deposits for the upcoming school year or have decided to not send their son to VFMA.

12. Similarly, we have significant concerns as to whether the school will ever be able to deliver on its promise or even if it will be able to financially continue operation. For this reason, we have decided not to enroll our son at VFMA for the coming school year.

We certify under penalty of perjury under the laws of the Commonwealth of Pennsylvania that the foregoing is true and correct.


Michael D. Miscoe                              Susan K. Miscoe

03/25/2019                                     3/25/19

DATE                                           DATE

# Affidavit

My name is Kristin Moore, and my son, Parker Moore is a 16-year-old, 11th grade cadet at Valley Forge Military Academy and College. My husband, and two other children reside in New Jersey.

We enrolled Parker in Valley Forge because of the philosophy and approach to shaping young men into leaders, in a tightly structured environment. We believed in the mission of Valley Forge, as well as their vision and five cornerstones of development. We felt it was THE best opportunity for Parker. In addition, we were more than impressed with General Walt Lord and what he was bringing to the institution. If not for Walt Lord, we would not have made the difficult decision to entrust Valley Forge with our son.

Therefore, we will not re-enroll, submit any course selections, NOR make any tuition payment to Valley Forge Military Academy unless Walt Lord is reinstated as President of VFMAC.

Regards,

Kristin Moore

<u>AFFIDAVIT</u>

My name is Scott Keith Newell.  I am the father of Valley Forge Military Academy (VFMA) freshman (9th grade) cadet Aidan G. Newell, aged 15 years.  We are residents of South Carolina.

As a 1988 Alumnus of the school, I am intimately familiar with the product Valley Forge could again be, despite several years of the way the Board of Trustees has been operating the school.  We enrolled Aidan at VFMA because of the character, demonstrated leadership and vision for VFMA of Major General Walt Lord.  We believed MG Lord has demonstrated the talent needed to return VFMA to the product we want, and the product we were told it would be.  That vision has now been acutely changed because of the actions of a clearly unstable Board of Trustees, specifically Chairman John English.  In essence, I was sold a product and that product was switched to an unacceptable alternative.

We fully intend to re-enroll our son annually for the next three years until his graduation from VFMA.  However, I will not re-enroll my son, nor select academic courses, nor pay any deposit or tuition until Board of Trustees Chairman John English resigns or is removed from the Board and Major General Walt Lord is extended an invitation by a stabilized, reconstituted Board to return as President of VFMA&C.

_March 20, 2019_

Scott K. Newell

Father of Cadet Aidan Newell

Columbia, South Carolina

# Mark Oskowiak



3040 David Drive, Abington, PA 19001
267-474-6588
TheSkos@verizon.net

3/22/19

To whom it may concern,

Our son Kevin Oskowiak is a 15 year old Cadet in 9th grade at VFMAC.
We adopted our son from foster care when he was 3 years old. Our son has struggled with the abuses he experienced as a child. We were his fourth home in 3 years and he has had trouble accepting us as his authority figures thus has not respecting our rules. Our son is an amazing, resilient young man that has so much potential, but he is lost within himself. He has been diagnosed and treated for ADHD. My wife and I realized that we have a small window of opportunity left to be able to help Kevin become a successful, happy man with good moral character.

We decided that military school may afford him this opportunity to make the changes necessary. Although we are in the back yard of VFMAC we decided to enroll Kevin in Carson Long Military Academy. We did not send him to VMAC originally because we were aware of the many issues the Academy has experiences in recent years. We came to VFMAC when they invited the Carson Long Cadets to attend once that school closed. We were skeptical coming to open house because of the tarnished reputation.

We were so impressed with Major General Walt Lord. He had an infectious enthusiasm that was hard to ignore. He was so transparent with any question presented to him and we completely bought into his "school on the rise" vision. After speaking with him at open house we decided on enrolling Kevin in the core of cadets. We knew coming into it that things would not be perfect, but we knew many positive changes were ahead. Walt Lord did not disappoint. He was visible, transparent, and acknowledged when there were issues and invited parents to speak to him about them. Big, positive changes were happening! Walt was everywhere promoting the school and his mission. He got many people back on the band wagon and was starting to polish the tarnish on the schools reputation. We were exited and knew amazing things were happening.

When he resigned as President all hope was lost. Walt Lord was the reason the changes were occurring with the school. The fact the BOT allowed this to happen is an example of every reason we didn't look at VFMAC in the first place. Without Walt Lord we will not be back! We have already applied to Camden Military Academy and will be looking into Fishburne Military Academy as well. This is really unfortunate. But our son has been thru a lot in his life and we need to put him in a solid institution to help direct his course.

If Major General Walt Lord is not reinstated The Oskowiak Family will not be returning to VFMAC. We also withdrew our deposit for summer camps as well.

Hoping for change,
Mark Oskowiak

Commonwealth of Pennsylvania
Notarial Seal
HELEN ADAMS – Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Apr 7, 2021

Helen Adams
3/22/2019

Commonwealth of Pennsylvania                    Affidavit

County of _Berks_

My current legal name is Kathleen McCall Readinger, and my current occupation is Registered nurse and parent of Cadet Aidan M. Readinger, VFMAC, and Class of 2022.  I am presently 57 years old, and my current address is 2901 Park Place, Reading, PA 19609.

MG and Grace Lord have been the glue that binds the Corp of Cadets at VFMAC.  I have had several personal conversations with both for the betterment of my cadet's experience.  MG Lord has demonstrated beyond a shadow of a doubt his commitment to the Cornerstones VFMAC was built on.  The very reason I sent Cadet Readinger to VFMAC in the fall of 2018.

I was amazed at the respect the cadets showed for MG and Grace Lord, nothing like I anticipated when enrolling Cadet Readinger.  Professionalism, decorum, and leadership are how MG and Grace Lord conduct themselves in every VFMAC function they are charged with.

I fully anticipate that VFMAC will continue to function, however without the heart of that institution.  What a tragedy for VFMAC to have had the perfect fit in a leadership role and to have discarded it with contempt.  I invested my hard earned dollars in a program where Cadet Readinger would be given the necessary tools for a manhood based on; academic excellence, integrity, honesty, service, teamwork, organizational pride, setting/achieving personal goals, lifelong physical wellness and finally leadership. I cannot foresee those tools being disseminated by the men and women responsible for the decision making process at VFMAC.

I am currently withholding my final tuition payment, my re-registration payment Cadet Aidan Readinger's course selection for 2019-2020 and seeking copies of Cadet Aidan Readinger's transcripts for transfer to another military academy for 2019-2020 school year.

I hereby state that the information above is true to the best of my knowledge.  I confirm that the information here is both accurate and complete, and relevant information has not been omitted.

Signature of Individual

_Kathleen McCall Readinger_

Date

_3/21/2019_

Notary Public

_Nancy L Wagner_

Title and Rank

_____

Date Commission Expires

_____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nancy L. Wagner, Notary Public
Kenhorst Boro, Berks County
My Commission Expires Nov. 29, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**Keith** & Sylvia Reihl
950 Minisink Way
Westfield, NJ 07090

Board of Trustees
Valley Forge Military Academy & College
1001 Eagle Road
Wayne, PA 19087-3695

March 21, 2019

To Board of Trustees:

I am writing in connection with the recent turmoil regarding the resignation/termination of MG Lord and the apparent change in direction of VFMAC away from a Military influence. Our son is cadet John Reihl, in 8th grade, living at Hooker Hall. I lived in Wayne as a teenager back in 1970 and was very familiar with the school. People in the neighborhood were always impressed when they came across cadets in town or at the mall. The cadets were always well dressed and extremely polite. To this day, that continues.

It is important that you understand that the only reason our son is at VFMAC is because of the military influence. He is a bright child with a great heart but needed the additional discipline that only a military school environment could provide. Knowing that bad behavior, keeping a messy room or not doing his homework would have an adverse impact on him. Much stronger than a public school but nothing over the top. Just enough to get them to modify their behavior. In this regard, we have seen a very positive change in our son, as have our family members.

MG Lord has been a very positive influence at VFMAC. I hear this from every parent that I talk with and many of the alumni. If you lose him and move forward with this apparent plan to broaden the student enrollment by eliminating the military influence you will jeopardize the entire institution. You will not be able to compete; your academic program is not good enough to compete as it stands today. More importantly, you will jeopardize the position as a good military influenced school that you have earned over nearly 100 years. I am not alone in thinking about moving my son to another school if you proceed. The person that has the greatest day to day influence on the school and the kids that attend is MG Lord, not John English! The Board needs to back off and stop micromanaging MG Lord. Go back to your day jobs and let MG Lord run the school.

Very truly yours,

*Keith Reihl*     3/22/19
Keith Reihl

# AFFIDAVIT

County of _Burlington County_____

State of _New Jersey_____

Before me, the undersigned authority, on this day personally appears _Francis B. Reynolds, 237 Wenonah Avenue, Mantua, New Jersey, 08051, known to me to be the person whose name is subscribed to the following instrument, and having been duly sworn, upon his/her oath, states as follows:

I reside at 237 Wenonah Avenue, Mantua, New Jersey 08051

My son Carl I. Reynolds, attends the Valley Forge Military Academy, Class of 2020.

If Major General Walter T. Lord is not immediately reinstated at the President of the Academy, I will not reenroll my son in the school next year.

I, FRANCIS B Reynolds, have read the foregoing statement consisting of _1_ pages. I fully understand the contents of the statement and certify that the statement is a factual account. I have initialed all corrections and have initialed the bottom of each page containing the statement. I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement.

Subscribed and sworn before me
this _25th_ day of _March_____, 20_19_ at

_Mary K. Talbott_
Mary K. Talbott
Notary Public of New Jersey
My Commission Expires July 2019

Page _1_ of _1_ pages                    Affiant's initials _FBR_

I am Casey William Roe of 657 Golden Eagle Way, Lancaster, Pennsylvania 17601.  I am father of Christopher William Roe, 15, a current 9th cadet in attendance at Valley Forge Military Academy (VFMA).

My son is in his second year on campus and, while the structure provided at the school was a great step up from public school, it was truly lacking for what we expected as a military school. When MG Lord took over as president towards the end of last school year, it was like someone finally breathed life into the school.  He was energetic, driven, and enthusiastic, and his attitude was contagious.  We could see his influence at every turn, from the TAC officers, to the teachers, to the cadets.  We know, MG Lord was turning this school around and was making a huge difference in just the 10 months he was there.

This school has had 2 presidents resign in the 19 months my son has attended VFMA.  This change is not good for anyone and it makes me wonder why the resignations keep coming?  MG Lord was good for this school and he was making change.  I feel like, without his leadership, this school will continue to decline.

I will not reenroll my son nor pay any deposits until MG Lord is reinstated as president of VFMAC.

Sincerely,

Casey William Roe

Commonwealth of Pennsylvania
County of _Lancaster_

Sworn to and subscribed before me
this _21_ day of _3_, 20_19_

Commonwealth of Pennsylvania - Notary Seal
Dominic Dusel, Notary Public
Lancaster County
My commission expires December 4, 2022
Commission number 1287301

March 21,2019

# VFMAC

1001 EAGLE ROAD, WAYNE PA 19087

To whom this may concern;

I am writing this letter about my son, Gregory Sacchetti, age 17 a junior at VFMAC, out home address is 30 Cabot Court, Media Pa 19062. I am writing because of the dismissal of MG Lord and the way the situation has been handled. MG Lord is the **ONLY** reason my son attended this year at VFMAC, the only reason!!!!  The school does not follow military standards and is known in the community as not a great place to send you child. Our family came from Carson-Long, which has closed its doors in the spring of 2018. I researched many military schools and I was actually going to send my son to Fishburne. I came to VF open house and met MG Lord, during our conversion I became convinced he was the right person to lead this school and that the school would completely turn around and REALLY become the **"School on the rise".** I believed his vision of what the school could become. Sadly, I will not be returning next year if MG Lord is not reinstated, I have **no confidence** in the **current BOT** and their micro-managing and interfering style. The BOT must change and MG Lord reinstated, if this does not happen my son will be attending Fishbourne Academy in the fall.

SINCERELY,

PATRICIA SACCHETTI

03/21/2019

Sherreice W Ybrinow

SHERREICE WYBINOW
My Commission Expires
June 8, 2021

30 Cabot Court, Media, PA 19063

March 21, 2019

Norm and Jeannie Sandy
26 Lupus Lane
Sewell, NJ  08080

RE:    Our Official Affidavit

To Whom It May Concern:

This is our son, Logan Bradley Hall's, first year attending Valley Forge Military Academy and College. Logan is a 15 year old freshman in C Company, 9th grade, and resides in Hocker Hall. For us, this year started with high hopes even though Plebe period was reduced (only 4 weeks). We still forged forward with the knowledge that Major General Walt Lord and his wife Grace were at the helm!!!

After graduation from Plebe and becoming a cadet, it became apparent that our military school was less militant than we thought it would be! The realization that supervision was lacking but more importantly structure and discipline were not as we expected. We still continued with HIGH HOPES knowing the vision of MG Lord to restore the traditions which included MORE DISCIPLINE and the STRONG Military Model returning!!!

Fast Forward to March 8, 2018, our doom's day if you will, when MG Lord gave his resignation and subsequently was terminated by the BOT 2 days later. We, the current parents and Alumni, had a hearing with the AABOT to let our frustrations and concerns with the BOT be known. There is a total lack of transparency, integrity, and competence in the governing body of this institution and because of this and the loss of MG Lord we will NOT be returning for the next school year. We want to make clear, our intention will change if the BOT is revamped and becomes open and transparent AND if MG LORD returns to his leadership role as PRESIDENT of our VFMAC.

Sincerely,

Jeannie Sandy
(856) 381-1230

Lynn Corona
Notary Public
New Jersey
My Commission Expires May 30, 2022
No. 2421952

Suzanne L. Zigo, Ed.D
546 Lincoln Road
Pilesgrove, NJ 08098
856-305-7904 (cell)
856-769-1761 (business)

Parent of Ryan P. Zigo
Age 15
First Year Freshman Student at Valley Forge Military Academy Class of 2022

To whom it may concern,

I enrolled my son at the Valley Forge Military Academy in June of 2018 with certain expectations. Among those expectations was that my son would receive a top-notch military education with a high level of discipline as well as academic rigor. The school's motto is #school on the rise. I believe in this message and with that in mind I intend to enroll my son to attend the next three years. I will not however, do so if the leader who initiated the positive changes does not return. Major General Walt Lord has been a much-needed commanding presence who has had tremendous success in reinvigorating this academy. I stand with Major General Walt Lord. He has, in a very short period of time, breathed new life in this school. The events leading up to Major General Lord's resignation indicate a difference of philosophies with the Board of Trustees. Until the Board of Trustees is able to stabilize the revolving door of presidents at the academy I will not re-enroll my son.

Sincerely,

*Suzanne Zigo*

Suzanne Zigo, Ed.D

HEATHER WADDINGTON
Notary Public of New Jersey
Commission # 50097003
My Commission Expires Jan. 16, 2024

# EXHIBIT H

# VFMAC BoT: increase transparency let General Lord lead Valley Forge as he sees fit



**2,485 have signed.** Let's get to 5,000!



**Sandor Farkas** started this petition to **VFMAC Board of Trustees**

General Walt Lord has submitted a letter of resignation as President of VFMAC because of a, "Philosophical disagreement with the Board Chairman. I've tried to work through it for the past 10 months, but it's become untenable."

In order to save our school, we, the alumni, demand that the Board of Trustees increase transparency over what has transpired and all future operations.  Furthermore, we ask that the BoT resolve its differences with General Walt Lord in his favor so he can return to his post as President of VFMAC.

Please refrain from any type of threatening language or behavior, as it is wrong and counterproductive.