IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEREK JAMES GRAHAM, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>VALLEY FORGE MILITARY ACADEMY<br>AND COLLEGE, et al.,<br><br>        Defendants. | CIVIL ACTION<br>NO. 19-1362 |

**OPINION**

**Slomsky, J.**                                                                                                                                November 27, 2019

**I.    INTRODUCTION**

Plaintiffs Derek Graham and Scott Newell (collectively, "Plaintiffs") bring this breach of contract action against Defendants Valley Forge Military Academy and College ("VFMAC"), Valley Forge Military Academy Foundation Board of Trustees (the "Board"), and John English, in his capacity as Chairman of the Board ("English" and collectively, "Defendants"). Plaintiffs are parents of two cadets who were enrolled at VFMAC. They allege that Defendants failed to provide certain educational services and inappropriately managed VFMAC in violation of contractual agreements the parties entered into when Plaintiffs enrolled their children at the school.

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 27). The instant Motion was filed on June 4, 2019, seeking dismissal of the Amended Complaint for being untimely filed and for lack of subject-matter jurisdiction. On June 18, 2019, Plaintiffs filed a Response in Opposition (Doc. No. 29). A Reply (Doc. No. 31) and Sur-Reply (Doc. No. 32) were also submitted.

1

On July 12, 2019, the Court issued an Order that resolved whether the Amended Complaint was timely filed. (Doc. No. 33.) In the Order, the Court exercised its discretion under Rule 15(a) of the Federal Rules of Civil Procedure and allowed Plaintiffs to proceed on their Amended Complaint, despite finding that it was improperly filed without leave of court.[1] Therefore, the only issue that remained is whether the Court has subject-matter jurisdiction over this case. For reasons that follow, the Court finds that subject-matter jurisdiction has not been established and the Amended Complaint will be dismissed with leave being granted to submit one further amended complaint.

## II.   BACKGROUND

VFMAC is an independent college preparatory boarding school and junior college located in Wayne, Pennsylvania. (Doc. No. 26 at 3.) It is run by the Board, which oversees its operations, including the hiring and firing of the organization's leadership. (Doc. No. 27-1 at 6.) John English has been Chairman of the Board since 2016. (Id.)

In the Spring of 2018, Plaintiffs enrolled their children at VFMAC. (Doc. No. 26 at 4.) During enrollment, each Plaintiff signed a "Billing and Payment Contract," which detailed the terms of admission, including, inter alia, various deposits and fees, tuition, and financial aid options. After enrolling their sons at VFMAC, Plaintiffs became members of the Parents Association and received copies of the Parent Handbook, which detailed VFMAC's educational approach, rules concerning student conduct, and extracurricular offerings. (See Doc. No. 26-2.)

---

[1] Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 27), which is the subject of this Opinion, was originally titled Defendants' Motion to Dismiss Plaintiffs Complaint and Untimely Amended Complaint. However, since the Court has already found that the Amended Complaint was not untimely filed (Doc. No. 33), Defendants' Motion will be referred to in this Opinion as Defendants' Motion to Dismiss Plaintiffs' Amended Complaint.

2

The Board hired Major General Walter Lord ("Lord") as President of VFMAC in April 2018. (Doc. No. 26 at 8.) On March 8, 2019, however, less than a year after assuming the role, Lord submitted his written resignation to the Board. (Id. at 8.) In the letter, Lord cited dysfunctional governance as the primary reason for his departure. (Doc. No. 26-3 at 2.) Lord described Chairman English as a micromanager who prevented him from effectively carrying out his duties as President by meddling in the day-to-day affairs of running the school. (See id.) In his resignation letter, Lord offered to remain in his position at VFMAC through June 30, 2019, but that he was "prepared to depart sooner if the [Board] so desire[d]." (Id.)

On Sunday, March 10, 2019, English emailed a letter to Lord informing him that the Board had accepted his resignation by unanimous vote and that Lord's employment at VFMAC was terminated, effective immediately. (Doc. No. 26-5.) The following day, Monday, March 11, 2019, the Board publicly announced that Lord had been replaced as President by two senior employees of VFMAC, Colonel Stuart Helgeson, the Superintendent and Chief Operating Officer of VFMAC, and Vince Vuono, the Chief Financial Officer of VFMAC. (Doc. No. 1 at 21.)

The announcement of Lord's resignation caused concern within the VFMAC community, evidenced by more than thirty notarized letters from parents expressing their support for Lord, with many threatening not to re-enroll their child for the upcoming school year if Lord was not reinstated as President. (See Doc. No. 26-7.) The community's response to Lord's resignation and the accusations levied within his resignation letter were so significant that English issued a public letter responding to the "rumors and innuendo surrounding [Lord's] unexpected departure[.]" (Doc. No. 1 at 22.)

English's open letter apparently did not quell the support for Lord's reinstatement. On April 1, 2019, Plaintiffs initiated this case by filing a Complaint (Doc. No. 1) and a Motion for a

3

Temporary Restraining Order and Preliminary Injunction (Doc. No. 2) against Defendants. In the Complaint, Plaintiffs brought two claims against Defendants: one for breach of fiduciary duty (Count I) and a second for breach of duty of loyalty (Count II), in connection with English's and the Board's termination of Lord. Plaintiffs alleged, among other things, that Lord's termination was in violation of the Board's bylaws. (Doc. No. 1 at 7.)

On April 1, 2019, Judge Nitza I. Quiñones, the emergency judge on duty at the time Plaintiffs filed this case, held a hearing on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. No. 2.) On April 2, 2019, Judge Quiñones denied Plaintiffs' request for a temporary restraining order. (Doc. No. 5.)

On April 9, 2019, Plaintiffs filed a Motion for Expedited Discovery (Doc. No. 9) and Defendants filed a Motion to Dismiss Plaintiffs' Complaint (Doc. No. 10). Defendants moved to dismiss the Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Id.) With respect to subject-matter jurisdiction, Defendants argued that the Court lacked jurisdiction over this case because (1) the parties were not completely diverse and (2) Plaintiffs failed to join Lord—a necessary and indispensable party—whose joinder would further destroy diversity of citizenship between the parties. (Id.)

On April 10, 2019, the Court held a telephone conference on the record with counsel for the parties to discuss Plaintiffs' Motion for Expedited Discovery and Defendants' Motion to Dismiss. On April 11, 2019, the Court entered an Order denying Plaintiffs' Motion for Expedited Discovery but affording Plaintiffs the opportunity to engage in limited jurisdictional discovery on the issue of diversity of citizenship of the parties. (Doc. No. 14.)

On April 29, 2019, the Court held a second telephone conference on the record with counsel for the parties to clarify the permissible scope of jurisdictional discovery. After the conference, the Court entered an Order memorializing the scope of permissible jurisdictional discovery. (Doc. No. 20.) In the April 29, 2019 Order, the Court also set forth Response and Reply deadlines with respect to Defendants' pending Motion to Dismiss. (Id.) The Court ordered Plaintiffs to "submit a Response to Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. No. 10) by May 28, 2019." (Id.) The Court also allowed Defendants to "submit a Reply in support of their Motion to Dismiss Plaintiffs' Complaint (Doc. No. 10) by June 4, 2019." (Id.)

On May 28, 2019, Plaintiffs did not file the Response as directed, but instead filed an Amended Complaint. (Doc. No. 26.) In the Amended Complaint, Plaintiffs again named VFMAC, the Board, and English as Defendants, and still alleged that the Court has jurisdiction over the case based on diversity of citizenship between the parties. (Id.) A notable difference in the Amended Complaint, however, is that Plaintiffs removed their claims against Defendants for breach of fiduciary duties (Count I) and breach of duty of loyalty (Count II) and replaced both claims with a single claim for breach of contract. (Id.)

Plaintiffs allege that they each entered into a contract with VFMAC when they enrolled their sons and that Defendants breached the terms of the agreement. (Doc. No. 26 at 4.) While Plaintiffs are vague about the contracts the parties allegedly entered into at the time of enrollment, it appears from the pleadings that the Billing and Payment Contract and the Parent Handbook are the documents at issue. (Doc. No 26 at 4-7.)

Among the allegations levied, Plaintiffs claim that (1) VFMAC did not provide the military-style education it promised because it did not adhere to its own "Five Cornerstones" of (i) academic excellence, (ii) character development, (iii) personal motivation, (iv) physical

5

development and (v) leadership; (2) VFMAC failed to enforce its rules concerning student conduct and failed to maintain its facilities, which created unsafe conditions on campus; and (3) VFMAC failed to abide by its own bylaws when terminating Lord and operated with undisclosed conflicts of interest. (Doc. No. 26 at 7.) Plaintiffs asked for relief in the form of (1) reimbursement of tuition paid to VFMAC, (2) attorneys' fees and costs, (3) compensation for the "diminished value of a private school education," and (4) injunctive relief in the form of appointment of a Custodian to the Board, who must ratify any future Board action. (Doc. No. 26 at 13.)

On June 4, 2019, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. No. 27.) In the Motion and in related filings, Defendants argue that the Amended Complaint should be dismissed for, among other things, lack of diversity of citizenship jurisdiction. Defendants argue that the parties are not diverse, and that Plaintiffs' claim is for less than the required amount in controversy. (Doc. No. 27-1 at 9-10; Doc. No. 31 at 2-3). Since diversity of citizenship jurisdiction is the statutory authorization Plaintiffs rely on to litigate this case in federal court, Defendants ask the Court to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction.

## III. DISCUSSION

The bases for federal subject-matter jurisdiction are limited and strictly defined by Congress. See County of Wash. v. United States Bank N.A., No. 11-1405, 2012 U.S. Dist. LEXIS 125748, at *45-46 (W.D. Pa. Aug. 17, 2012) (citing Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) (stating that it is a "bedrock principle that federal courts have no jurisdiction without statutory authorization"); GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 34 (3d Cir. 2018) (explaining that it is fundamental that federal courts must have subject-matter jurisdiction before considering the merits of a case). For federal courts to have subject-matter jurisdiction over a civil action, they must be able to exercise either federal question

jurisdiction, pursuant to 28 U.S.C. § 1331, or diversity of citizenship jurisdiction, pursuant to 28 U.S.C. § 1332. See Heimbach v. McGee, No. 4:07-1561, 2007 U.S. Dist. LEXIS 64138, at *1-2 (M.D. Pa. Aug. 30, 2017).

In this case, the only possible basis to establish subject-matter jurisdiction is diversity of citizenship, pursuant to 28 U.S.C. § 1332, because Plaintiffs' breach of contract claim does not involve a question of federal law. Under 28 U.S.C. § 1332(a), a federal court may exercise subject-matter jurisdiction in cases where there is complete diversity of citizenship between plaintiffs and defendants and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; see Development Fin. Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156, 158 (3d Cir. 1995) ("It is axiomatic that the federal judiciary's diversity jurisdiction depends on complete diversity between all plaintiffs and all defendants."); Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) (explaining that 28 U.S.C. § 1332 gives federal district courts original jurisdiction of all civil actions "between . . . citizens of different States where the amount in controversy exceeds the sum of $75,000"). Thus, § 1332 requires satisfaction of two prongs: diversity of citizenship and the requisite amount in controversy. Here, Plaintiffs' Amended Complaint does not satisfy either prong.

### A. The Court Cannot Conclude That the Parties Are Diverse Because the Amended Complaint Does Not Plead the Citizenship of VFMAC

The Amended Complaint does not properly allege that the parties have diverse citizenship. While the parties' filings appear to have resolved any dispute about the existence of diverse citizenship by agreeing to dismiss English and the Board as defendants,[2] the Amended Complaint

---

[2] Plaintiffs, in their Brief in Opposition to Defendants' Motion to Dismiss, concede that the Board and English should be dismissed from this case. (See Doc. No. 29 at 6) ("Plaintiffs admit that they did not contract directly with the Board of Trustees or Chairman John English, and therefore, acknowledge that the Board of Trustees and Chairman English should be dismissed as party

7

still does not properly plead the citizenship of VFMAC. In such circumstances, where the foundation of federal authority may be open to question, it is incumbent upon the court to resolve any doubts before proceeding to a disposition on the merits. Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n, 554 F.2d 1254, 1256 (3d Cir. 1977); see also Fed R. Civ. P. 12(h)(3).

In the instant case, the Amended Complaint does not properly plead the citizenship of VFMAC because it does not identify VFMAC's business structure. VFMAC's business structure is imperative because the citizenship of a business organization depends on its structure. For example, a corporation is treated as a singular entity and is a citizen of both its state of incorporation and the state where it has its principal place of business. See Ingram v. DESA, No. 08-1326, 2008 U.S. Dist. LEXIS 42834, at *13-14 (E.D. Pa. May 30, 2008) ("For purposes of § 1332, a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). In contrast, limited liability companies are plural entities and take the citizenship of each of their members. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010) ("the citizenship of an LLC is determined by the citizenship of its members.").

Here, the Amended Complaint merely states that VFMAC is "an American independent college prepatory boarding school (grades 7-12) and coeducational independent junior college and military junior college located in Wayne, Pennsylvania." (Doc. No. 26 at 3.) Although this suggests that VFMAC would be a citizen of Pennsylvania, without pleading VFMAC's business structure, the Court is unable to determine the appropriate citizenship standard and thus cannot

---

defendants."). Accordingly, the Board and English shall be dismissed as Defendants and VFMAC will remain as the sole Defendant in this case.

determine VFMAC's citizenship. Accordingly, the Court cannot conclude that the parties in this case have diverse citizenship for purposes of establishing diversity of citizenship jurisdiction.

    **B.**    **The Unliquidated Damage Claim in the Amended Complaint Does Not Support the Required Amount In Controversy for Purposes of Establishing Diversity of Citizenship Jurisdiction**

Plaintiffs have also not adequately pled that the amount in controversy exceeds the jurisdictional threshold of $75,000. See 28 U.S.C. § 1332(a). To determine whether the amount in controversy requirement is met, courts typically apply the "legal certainty" test. See e.g., St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Under this test, "the suit must be dismissed" only if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004) (quoting St. Paul Mercury Indem. Co., 303 U.S. at 289).

As stated in the "legal certainty" test, there are two ways courts can find to a legal certainty that the jurisdictional amount has not been met. Essex Ins. Co. v. J & D Blackwell Enters., No. 92-3721, 1993 U.S. Dist. LEXIS 7592, at *11 (E.D. Pa. June 8, 1993). The first is to find that the jurisdictional amount is not satisfied as a matter of law (i.e., the nature of the claim imposes a barrier to the amount that plaintiff might recover). Id. The second "is to find that, as a matter of fact, 'that the amount of damages stated in the declaration [is] colorable, and [has] been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating' federal jurisdiction." Id. (citing Barry v. Edmunds, 116 U.S. 550 at 560 (1886)). As the party asserting jurisdiction, Plaintiffs bear the burden of proving the amount in controversy exceeds the jurisdictional minimum. Jaconski v. Avisun Corp., 359 F.2d 931, 934 (3d Cir. 1966) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189-90 (1936)).

In the Third Circuit, a plaintiff's asserted amount in controversy faces a different level of scrutiny depending on if the claim originated in federal court or if the case was removed to that court. See Essex Ins. Co., 1993 U.S. Dist. LEXIS 7592, at *16. When cases originate in federal court, the asserted amount in controversy is judged by a stricter standard than in cases brought by removal. Id. Plaintiffs seeking original jurisdiction are aware of the required amount in controversy and are more likely to fabricate losses to litigate in their preferred forum. Id.

Scrutiny is further heightened when unliquidated damages are involved. See id. (citing St. Paul Mercury Indem. Co, 303 U.S. at 290). By their nature, unliquidated damages are unascertained, and there is a greater risk of manipulation, which justifies additional inspection, especially when a plaintiff relies on unliquidated damages to satisfy most of the amount in controversy. See Essex Ins. Co., 1993 U.S. Dist. LEXIS 7592, at *16 (citing St. Paul Mercury Indem. Co, 303 U.S. at 291); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993) ("when it appears that [a claim for non-actual damages] comprises the bulk of the amount in controversy . . . that claim should be given particularly close scrutiny.").

In the instant case, Plaintiffs' Amended Complaint includes three categories of damages: (1) reimbursement of tuition, (2) attorneys' fees and costs incurred in connection with the lawsuit, and (3) the diminished value of a private school education. (Doc. No. 26 at 13.) When taken together, and scrutinized under the appropriate legal standard, these professed damages do not satisfy the requisite amount in controversy for diversity of citizenship jurisdiction.

The first category of damages claimed by Plaintiffs, the out-of-pocket losses for tuition, are readily calculable. Plaintiffs allege in their Amended Complaint that they each paid VFMAC approximately $27,500 in tuition. (Doc. No. 32 at 2.) Defendants submitted affidavits verifying these figures, showing that Plaintiff Graham paid tuition to VFMAC in the amount of $27,136 and

Plaintiff Newell paid tuition to VFMAC in the amount of $27,575. (Doc. No. 30.) Thus, each Plaintiff remains approximately $47,500 short of the required jurisdictional amount.

The second category of damages, Plaintiffs' attorneys' fees and costs, cannot be considered for the purposes of establishing the jurisdictional amount. Under Third Circuit case law, attorneys' fees do not constitute part of the amount in controversy unless their payment is provided for by statute or contract. See Auto-Owners Ins. Co. v. Stevens & Ricci, Inc., 835 F.3d 388, 397 n.11 (3d Cir. 2016) ("Attorney's fees do not generally constitute part of the amount in controversy[.] As an exception to that rule, however, courts include attorney's fees in the amount in controversy calculation when . . . their payment is provided for by the terms of an underlying contract.); Jones v. General Motors Corp., 1991 U.S. Dist. LEXIS 4809, at *3 (E.D. Pa. Apr. 11, 1991) ("attorneys' fees awarded by right under contract [or] statute . . . may be included in determining whether the jurisdictional minimum is satisfied."). In addition, "a plaintiff must plead in his complaint that he has or will incur attorneys' fees as provided by statute or contract in order for such costs to be considered part of the amount in controversy for jurisdictional purposes." State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 99 (3d Cir. 1996). Here, Plaintiffs have not alleged that they are entitled to attorneys' fees by statute or contract. Therefore, the Court cannot include the cost of reasonable attorneys' fees when calculating of the amount in controversy and Plaintiffs remain approximately $47,500 short of the required jurisdictional amount.

Plaintiffs' third category of damages for the "diminished value of a private school education" cannot be considered for the purposes of establishing the jurisdictional amount. At the outset, the Court notes that this category of damages faces greater scrutiny than the prior two. As explained supra, claims of unliquidated damages, especially when such claims represent most of the jurisdictional amount, are subject to heightened scrutiny. See Essex Ins. Co., 1993 U.S. Dist.

LEXIS 7592, at *16; Packard, 994 F.2d at 1046. Accordingly, bald assertions of unliquidated damages without factual support in the record cannot contribute toward establishing the requisite amount in controversy. See Tagayun v. Lever & Stolzenberg, No. 05-4101, 2007 U.S. Dist. LEXIS 94444, at *18 (D.N.J. Dec. 27, 2007) (finding that claims of unliquidated damages without any supporting facts in the record did not contribute toward establishing the jurisdictional minimum); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936) ("the party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleading the facts essential to show jurisdiction"); see also St. Paul Mercury Indem. Co., 303 U.S. at 289.

Unliquidated damages resulting from a breach of contract claim against a private educational institution for failure to provide represented educational services may be based on one of two grounds. First, unliquidated damages may arise from the express terms of the allegedly-breached contract(s). See Swartley, 734 A.2d at 919 (explaining that a contract between a university and its students is comprised solely of the provided written materials and therefore a claim for breach of contract cannot stand unless linked to the written policies). Second, unliquidated damages may arise under the theory of consequential damages, if supported by other factual allegations that would permit recovery. See Ochman v. Wyo. Seminary, No. 3:12-88, 2012 U.S. Dist. LEXIS 69770, at *8-11 (M.D. Pa. Mar. 18, 2012). Consequential damages are "those collateral losses, such as expenses incurred or gains prevented which result from the breach." LBL Skysystems (USA), Inc. v. APG-America, Inc., 319 F. Supp. 2d 515, 523 (E.D. Pa. 2004). To recover consequential damages, it must be shown that such damages (1) "would naturally and ordinarily result from the breach"; (2) "were reasonably foreseeable and within the contemplation of the parties at the time they made the contract"; and (3) "can be proved with reasonable certainty." Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 597 (3d Cir. 2009).

Therefore, consequential damages stemming from an educational institution's alleged breach of contract are viable if the contract at issue expressly allows their recovery or if facts are alleged that show a breach of contract and the requisite three elements to recover consequential damages. See generally, Ochman, 2012 U.S. Dist. LEXIS 69770.

In the instant case, Plaintiffs do not allege any facts that show the purported contracts included provisions permitting unliquidated damages or any other facts that show the availability of consequential damages. Instead, Plaintiffs argue that their bald assertion of meeting the $75,000 amount is established because they may "plead unliquidated damages as a basis for satisfying the amount in controversy." (Doc. No. 32 at 3.) However, the general legal viability of unliquidated damages does not bestow upon Plaintiffs the right to allege an unintelligible injury to establish the requisite amount in controversy. See Vives v. Rodriguez, 849 F. Supp. 2d 507, 513 (E.D. Pa. Jan. 31, 2012) (citing Albright v. R.J. Reynolds Tobacco Co., 531 F.2d 132, 134 (3d Cir. 1976) (explaining that a plaintiff's claim for unliquidated damages, especially when frivolous, cannot be decisive to establish jurisdiction of the federal courts)).

Indeed, Plaintiffs' professed unliquidated damages are so amorphous, and their supporting factual allegations so deficient, that it is unclear what loss Plaintiffs claim they sustained beyond the amount of tuition paid. Even with the furthest inferential leaps, it is unclear how compensation for the diminished value of a private school education would be anything but duplicative of Plaintiffs' claim for reimbursement of tuition paid to VFMAC. Presumably, the cost of tuition reflects the value of a private school education, thus a complete reimbursement would satisfy even the greatest possible reduction in value. Accordingly, Plaintiffs claim for unliquidated damages may not contribute toward establishing the jurisdictional minimum and Plaintiffs could not, to a

legal certainty, recover the statutory minimum amount in controversy to establish diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

## IV.  CONCLUSION

Plaintiffs have not alleged sufficient facts to show that Plaintiffs and VFMAC have diverse citizenship and that the requisite jurisdictional amount in controversy is satisfied.  Therefore, the Court cannot, at present, determine whether it has subject-matter jurisdiction over this case.

However, pursuant to 28 U.S.C. § 1653,[3] Plaintiffs will be permitted to amend their pleading to demonstrate that diversity of citizenship jurisdiction exists.  See USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 204 (3d Cir. 2003) (noting that Section 1653 gives district courts "the power to remedy inadequate jurisdictional allegations").  Plaintiffs will be given twenty-one (21) days to file a second amended complaint that includes sufficient allegations establishing the amount in controversy and diversity of citizenship of the parties.  Failure to do so will result in the action being dismissed.  An appropriate Order follows.

---

[3] 28 U.S.C. § 1653 provides as follows: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."